The White Cross Hospital Assn., Appellant, *v.* Board of Tax Appeals, Appellee, et al.

(No. 73-696—Decided May 29, 1974.)

*Messrs. Bricker, Evatt, Barton & Eckler* and *Mr. William R. Chadeayne,* for appellant.

*Mr. William J. Brown,* attorney general, *Mr. Dwight C. Pettay, Jr.,* and *Mr. John C. Duffy, Jr.,* for appellee.

*Per Curiam.* The facts in the case before us are substantially the same as they were when this court decided

*White Cross Hospital Assn* v. *Warren, Aud.* (1966), 6 Ohio St. 2d 29. In a *per curiam* decision, the court held that:

"The subject building is being used commercially. *Cincinnati College* v. *State,* 19 Ohio 110. The decision of the Board of Tax Appeals is affirmed on authority of *Jewish Hospital Assn. of Cincinnati* v. *Board of Tax Appeals,* 5 Ohio St. 2d 179."

The appellant contends that a material change in the law has occurred since that decision which now mandates the opposite result. Its contention is that the enactment of R. C. 5709.121 broadens the charitable use exemption of R. C. 5709.12 to such an extent that its medical office building now qualifies for that exemption.

R. C. 5709.121, in pertinent part, provides:

"Real property * * * belonging to a charitable or educational institution * * * shall be considered as used exclusively for charitable or public purposes * * * if it is either:

"* * *

"(B) Otherwise made available under the direction or control of such institution * * * for use *in furtherance of or incidental to* its charitable, educational, or public purposes and not with the view to profit." (Emphasis added.)

Appellant argues that its operation of the medical building is "in furtherance of or incidental to" its overall charitable purpose. Appellant also argues that its position is fully supported by this court's decision in *Galvin* v. *Masonic Toledo Trust* (1973), 34 Ohio St. 2d 157.

This court affirmed the decision of the board in that case because it agreed with the board's finding that the "renting of the facility for private and commercial uses was 'incidental to the overall purpose' of the facility." This court further pointed out that the General Assembly had chosen to define the words "used exclusively for charitable purposes," as used in R. C. 5709.12, by enacting R. C. 5709.121.

In this case, the Board of Tax Appeals concluded that:

"There is no evidence of any charitable activity being carried on in this building. Admittedly, it is a convenient arrangement and no doubt is beneficial in some respects to

the operation of the hospital, but the use of this property is a commercial use and it is not within the purview of R. C. 5709.121.''

In *Doctors Hospital* v. *Bd. of Tax Appeals* (1962), 173 Ohio St. 283, 287, Bell, J., in a concurring opinion, said: ''* * * Hospitals are charitable institutions because of the services furnished to the public rather than because of those furnished to the members of a profession. * * *'' Although that case is not directly in point, the statement is apropos here.

The Board of Tax Appeals has decided that because of the commercial nature of the use of this property, whatever ''benefit'' the hospital may derive from that use is too remote to bring that use within the purview of R. C. 5709.-121. It is clear that the board has considered the pertinent language in that statute, but has still denied the exemption.

The rationale justifying a tax exemption is that there is a present benefit to the general public from the operation of the charitable institution sufficient to justify the loss of tax revenue. *Philada Home Fund* v. *Board of Tax Appeals* (1966), 5 Ohio St. 2d 135, 139. Exemption is the exception to the rule, and statutes granting exemptions are strictly construed. This court's duty is limited to determining whether the decision of the Board of Tax Appeals was unreasonable or unlawful.

The board determined that the building was used as a place ''in which the tenant-physician conducts and furthers his own private practice, paying competitive rental therefor.'' This court, from its examination of the record, cannot say that *Galvin, supra,* mandates the granting of the exemption in this case.

Nor can this court conclude that the operation of a medical office building by a nonprofit charitable hospital for the convenience of the private practice of its staff members is either ''in furtherance of or incidental to its charitable, educational, or public purposes,'' even in the absence of a profit.

From the record before us, the decision of the Board

of Tax Appeals was neither unreasonable nor unlawful, and it is, therefore, affirmed.

*Decision affirmed.*

CORRIGAN, CELEBREZZE and W. BROWN, JJ., concur.

STERN, J., concurs in the judgment.

P. BROWN, Acting C. J., HERBERT and STEPHENSON, JJ., dissent.

STEPHENSON, J., of the Fourth Appellate District, sitting for O'NEILL, C. J.

STERN, J., concurring. I concur in the judgment, even though I have serious misgivings about the majority's attempt to harmonize past pronouncements of this court with the judgment rendered today. Because of the frequent litigation arising out of the application of R. C. 5709.12, and because of the financial reliance that many institutions place on the tax-exempt classification of their property, I feel it necessary to state my interpretation of the rule of law contained in R. C. 5709.121.[2] That statute, in its entirety, reads:

"Real property and tangible personal property belonging to a charitable or educational institution or to the state or a political subdivision, shall be considered as used exclusively for charitable or public purposes by such institution, the state, or political subdivision, if it is either:

"(A) Used by such institution, the state, or political subdivision, or by one or more other such institutions, the state, or political subdivisions under a lease, sublease, or other contractual arrangement:

"(1) As a community or area center in which presentations in music, dramatics, the arts, and related fields are made in order to foster public interest and education therein;

"(2) For other charitable, educational, or public purposes;

---

[2]133 Ohio Laws, Pt. III, 2646, effective October 24, 1969.

"(B) Otherwise made available under the direction or control of such institution, the state, or political subdivision for use in furtherance of or incidental to its charitable, educational, or public purposes and not with the view to profit."

Initially, it is important to observe that, although R. C. 5709.121 purports to define the words used exclusively for "charitable" or "public" purposes, as those words are used in R. C. 5709.12, the definition is not all-encompassing. R. C. 5709.12 states: "* * * Real and tangible personal property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation." Thus, *any* institution, irrespective of its charitable or noncharitable character, may take advantage of a tax exemption if it is making exclusive charitable use of its property. See *Wehrle Foundation* v. *Evatt* (1943), 141 Ohio St. 467, 49 N. E. 2d 52. The legislative definition of exclusive charitable use found in R. C. 5709.121, however, applies only to property "belonging to," *i. e., owned by,* a charitable or educational institution, or the state or a political subdivision. The net effect of this is that R. C. 5709.121 has no application to noncharitable institutions seeking tax exemption under R. C. 5709.12. Hence, the first inquiry must be directed to the nature of the institution applying for an exemption. Since it appears that The White Cross Hospital Association is a nonprofit charitable and educational institution, it is appropriate to examine the applicability of R. C. 5709.121.

In my view, the overall purpose of R. C. 5709.121 is to declare that the ownership and use of property need not coincide for that property to be tax exempt. If a qualified institution, or governmental unit, owns property, that property is exempt from taxation if (1) the institution or governmental unit itself uses the property as specified in R. C. 5709.121(A)(1) or (A)(2); (2) the institution or governmental unit contractually allows another qualified institution or governmental unit to use the property as specified in R. C. 5709.121(A)(1) or (A)(2); or, (3) the institution or governmental unit makes the property available to any-

one *besides* another qualified institution or governmental unit, for a nonprofit use that is in furtherance of, or incidental to the owner-institution's (or owner-governmental unit's) charitable purposes. Appellant's property herein must qualify for tax exempt status, if at all, under R. C. 5709.121(B).

Plainly, the use to which appellant's medical office building is primarily put is to provide office space wherein hospital staff members can conduct their private practices. Equally clear is that the convenient proximity of the office building to the hospital improves and facilitates patient care, and thereby furthers appellant's primary *raison d'etre*. Yet, the improved patient care is the immediate result, not of the *use* to which the medical facility is put but of the *physical location* of the building. Move the office building down the road two miles and a serious question arises, even under the most liberal statutory construction, as to whether it would then significantly further, or be incidental to the operation of appellant's hospital.

The tax exempt status of property cannot primarily depend upon its geographical location. Appellant's medical facility is used to provide office space for the private practice of its staff physicians. This use is not "in furtherance of or incidental to" appellant's charitable purpose of operating a hospital, and the property cannot, therefore, be tax exempt under R. C. 5709.12.

The majority considers *Galvin* v. *Masonic Toledo Trust* (1973), 34 Ohio St. 2d 157, 296 N. E. 2d 542, to be reconcilable with its judgment in the present case. In *Galvin,* at page 159, this court quoted with approval the following statement by the Board of Tax Appeals:

" * * * such use [renting an auditorium and hall for private or commercial noncharitable uses] must be considered *incidental to the overall purpose behind the acquisition and construction of the property*— and it is doubtful if the facility could long continue in operation as a community or area center for the presentation of theatrical events if there was no use for private or commercial purposes * * *." (Emphasis added.)

The purpose behind acquiring and constructing property is irrelevant to a determination of whether the actual use of that property conforms to the requirements of R. C. 5709.12. To say otherwise would necessitate a judicial inquiry into intent that is totally out of step with the statutes governing tax exemption.[3]

HERBERT, J., dissenting. By the enactment of R. C. 5709.121, the General Assembly has announced its desire that certain types of tax exemptions for the institutions mentioned in that statute should not be restrictively considered. Cf. *Good Samaritan Hospital* v. *Porterfield* (1972), 29 Ohio St. 2d 25, 278 N. E. 2d 26. While I have often dwelt upon the legislative use of the phrase ''exclusively for charitable purposes,'' the employment of the flaccid word ''incidental'' seems to represent a wide swing of the pendulum in the opposite direction. If that is the legislative will where certain property is concerned, so be it. See *Galvin* v. *Masonic Toledo Trust* (1973), 34 Ohio St. 2d 157, 296 N. E. 2d 542.

PAUL W. BROWN, Acting C. J., dissenting. This court, in *Denison University* v. *Board of Tax Appeals* (1965), 2 Ohio St. 2d 17, concluded that the amendment of Section 2 of Article XII of the Ohio Constitution, effective in 1931, gave the General Assembly plenary power to determine exemptions from taxation.

R. C. 5709.12 legislatively exempts ''real and tangible personal property belonging to institutions that is used exclusively for charitable purposes'' and R. C. 5709.121(B) provides that real property and tangible personal property belonging to a charitable or educational institution shall be considered as used exclusively for charitable or public purposes by such institution when ''* * * made avail-

---

[3]Parenthetically, I note that *Galvin* dealt with the application of R. C. 5709.121. Whether or not it was correct to use that definitional statute when, as the facts showed, appellant Masonic Toledo Trust was not the fee owner of the property involved, but rather was the lessee under a 99-year lease, is of no importance in the instant case.

able under the direction or control of such institution * * * for use in furtherance of or incidental to its charitable, educational, or public purposes and not with the view to profit.''

The effect of R. C. 5709.121(B) is that in instances in which the real or personal property as described is used in furtherance of or incidental to the institution's charitable purpose and not with the view to profit, that property itself need not be used for an exclusively charitable purpose to be exempt from taxation. The holding of the Board of Tax Appeals was based upon its finding that the medical building is not ''used exclusively for charitable purposes and hence is not entitled to an exemption.'' Since R. C. 5709.121(B) makes such a finding immaterial, and since I conclude that the evidence requires a finding that the use of the offices herein described is ''in furtherance of or incidental to its charitable, educational, or public purposes'' of the White Cross Hospital Association and is not with a view to profit, I would reverse the Board of Tax Appeals.

STEPHENSON, J., concurs in the foregoing dissenting opinion.