[This opinion has been published in *Ohio Official Reports* at 77 Ohio St.3d 393.]

OLMSTED FALLS BOARD OF EDUCATION, APPELLANT, *v*. TRACY, TAX COMMR., ET AL., APPELLEES.

[Cite as *Olmsted Falls Bd. of Edn. v. Tracy*, 1997-Ohio-262.]

*Taxation—Real property—Park owned by fraternal, social organization does not qualify for exemption when property is not used exclusively for charitable purposes.*

(No. 95-2453—Submitted September 19, 1996—Decided February 5, 1997.)

APPEAL from the Board of Tax Appeals, No. 93-P-1381.

_____

{¶ 1} The Donauschwaben German American Cultural Center ("Donauschwaben"), appellee, owns approximately twenty acres of land in Olmsted Township, which Donauschwaben has named Lenau Park. Lenau Park contains a small lake, several soccer fields, tennis courts, a picnic area, playground, several service buildings, and a building that Donauschwaben calls the Cultural Center. The Cultural Center contains a bar and lounge, an outside patio or beer garden, an assembly room with stage, several other meeting rooms, a dance floor, a kitchen, offices, board room, restrooms, a bowling alley, maintenance rooms, and an indoor soccer field with locker rooms.

{¶ 2} Donauschwaben has organized many interest groups. People can join the Cultural Center itself or these various interest groups. These groups include the soccer club, the tennis club, the band, the orchestra, the German language classes and an associated parent-teacher organization, the skiing club, the dancing clubs, the youth culture clubs, the choir, the ladies auxiliary, the bowlers' club, and the senior group. Members generally pay nominal membership charges to join the Cultural Center and separate, nominal charges to join these interest groups. Generally, a person must be a member of the particular interest group to participate

in its activities. The interest groups, besides pursuing their interests, hold social events through the year, usually dinners, to raise funds for each group and the center.

{¶ 3} Donauschwaben limited the center's membership to one thousand persons during the tax year in question. However, Donauschwaben's membership had not reached that figure as of December 31, 1992. It has no other restrictions on membership. Furthermore, this membership limitation does not apply to the various interest groups.

{¶ 4} The center also raises funds by holding numerous public social events. It invites the public to an Octoberfest, a German Mardi Gras festival, and fish fries, among other events, through the year. Donauschwaben also rents its banquet facilities for dinners and wedding receptions, charging for the food it serves.

{¶ 5} Occasionally, Donauschwaben permits local government agencies to hold meetings and hearings in its center. On one occasion, Donauschwaben allowed the federal Immigration and Naturalization Service to advise immigrants and process citizenship applications. It also allows local fire departments to test their equipment at its lake and the public to fish and race model boats there.

{¶ 6} Donauschwaben operates the indoor soccer field during the winter months where area soccer teams may play. It charges the teams $220; however, the teams Donauschwaben sponsors pay only referee fees to play in the leagues.

{¶ 7} Overall, Donauschwaben had a profit of $110,102 in 1989, $97,217 in 1990, and $62,572 in 1991. As of December 31, 1991, it reported a total capital account of $1,301,671.

{¶ 8} Donauschwaben applied for exemption for this property for tax year 1988. It also filed an exemption application for tax year 1990 and for remission for tax year 1989. After the Tax Commissioner denied the exemption for tax year 1988, the Board of Tax Appeals ("BTA"), on appeal, issued a decision exempting the property for tax year 1988 on May 8, 1992. The commissioner then dismissed

the pending application for tax year 1990 because the property was thus on the exempt list.

{¶ 9} The Olmsted Falls Board of Education ("BOE"), appellant, filed complaints with the commissioner challenging the exemption for tax years 1989, 1990, 1991, and 1992. We affirmed the commissioner's dismissal of the complaints for tax years 1989, 1990, and 1991 because the BOE had not filed the complaints prior to December 31 of the tax years at issue. *Olmsted Falls Bd. of Edn. v. Tracy* (1996), 76 Ohio St.3d 386, 667 N.E.2d 1200. The complaint for tax year 1992, which the BOE had filed timely, is at issue here.

{¶ 10} The commissioner, citing the BTA decision exempting the property for tax year 1988, exempted all but the bar and beer garden from taxation for tax year 1992. The BOE appealed this order to the BTA, which affirmed. The BTA concluded that Donauschwaben is a charitable institution and that the property was exempt under R.C. 5709.12 and 5709.121.

{¶ 11} This cause is now before this court upon an appeal as of right.

_____

*Kolick & Kondzer, Thomas A. Kondzer* and *John P. Desimone*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Janyce C. Katz*, Assistant Attorney General, for appellee Roger W. Tracy, Tax Commissioner of Ohio.

*Kelley, McCann & Livingstone, Robert A, Brindza* and *Carl A. Murway*, for appellee Donauschwaben's German American Cultural Center, Inc.

_____

*Per Curiam.*

{¶ 12} We reverse the BTA's ultimate factual conclusion that Donauschwaben is a charitable institution. *SFZ Transp., Inc. v. Limbach* (1993), 66 Ohio St.3d 602, 604-605, 613 N.E.2d 1037, 1039-1040. We hold, instead, that Donauschwaben is not a charitable institution. It is, as the BOE argues, a fraternal,

social organization. Furthermore, we hold that Donauschwaben does not use this property exclusively for charitable purposes.

{¶ 13} R.C. 5709.12(B) states:

"*** Real *** property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation."

{¶ 14} Former R.C. 5709.121, during the 1992 tax year, stated:

"Real property *** belonging to a charitable *** institution ***, shall be considered as used exclusively for charitable or public purposes by such institution, the state, or political subdivision, if it is ***

"* * *

"(B) Otherwise made available under the direction or control of such institution, the state, or political subdivision for use in furtherance of or incidental to its charitable, educational, or public purposes and not with the view to profit." (133 Ohio Laws, Part III, 2646.)

{¶ 15} The BOE argues that Donauschwaben is a fraternal club that conducts social, recreational, and athletic activities. Thus, it argues, Donauschwaben is not a charitable organization. The BOE, next, conceding *arguendo* Donauschwaben to be a charitable institution, maintains that Donauschwaben operates with a view to generating profit and, thus, does not qualify under R.C. 5709.121. Donauschwaben, to the contrary, contends that it is a charitable institution, operating a community center, and that it qualifies for exemption under R.C. 5709.121.

{¶ 16} In *Episcopal Parish v. Kinney* (1979), 58 Ohio St.2d 199, 200-201, 12 O.O.3d 197, 198, 389 N.E.2d 847, 848, we approved of the concurring opinion of Justice Stern in *White Cross Hosp. Assn. v. Bd. of Tax Appeals* (1974), 38 Ohio St.2d 199, 203, 67 O.O.2d 224, 226, 311 N.E.2d 862, 864:

"'Initially, it is important to observe that, although R.C. 5709.121 purports to define the words used exclusively for "charitable" or "public" purposes, as those

4

words are used in R.C. 5709.12, the definition is not all encompassing. R.C. 5709.12 states "* * * Real and tangible personal property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation." Thus, *any* institution, irrespective of its charitable or noncharitable character, may take advantage of a tax exemption if it is making exclusive charitable use of its property. See *Wehrle Foundation v. Evatt* (1943), 141 Ohio St. 467 [26 O.O. 29], 49 N.E. 2d 52. The legislative definition of exclusive charitable use found in R.C. 5709.121, however, applies *only* to property "belonging to," *i.e., owned by*, a charitable or educational institution, or the state or political subdivision. *The net effect of this is that R.C. 5709.121 has no application to noncharitable institutions seeking tax exemption under R.C. 5709.12. Hence, the first inquiry must be directed to the nature of the institution applying for an exemption.* ***'"* (Emphasis *sic*.)

**{¶ 17}** According to this reasoning, any institution, whether charitable or noncharitable, may receive exemption for its property if it uses the property exclusively for charitable purposes. See, *e.g., Highland Park Owners, Inc. v. Tracy* (1994), 71 Ohio St.3d 405, 644 N.E.2d 284. Further, property belonging to a charitable or educational institution, or the state or a political subdivision, may be exempt if it is used as set forth in R.C. 5709.121.

**{¶ 18}** Thus, in deciding whether property is exempt under the charitable use provisions of R.C. 5709.12 and 5709.121, tax authorities must first determine whether the institution seeking exemption is a charitable or noncharitable institution. If the institution is noncharitable, its property may be exempt if it uses the property exclusively for charitable purposes. If the institution is charitable, its property may be exempt if it uses the property exclusively for charitable purposes or it uses the property under the terms set forth in R.C. 5709.121.

**{¶ 19}** In answering these questions, we turn first to *Planned Parenthood Assn. v. Tax Commr.* (1966), 5 Ohio St.2d 117, 34 O.O.2d 251, 214 N.E.2d 222, paragraph one of the syllabus, which states:

"In the absence of a legislative definition, 'charity,' in the legal sense, is the attempt in good faith, spiritually, physically, intellectually, socially and economically to advance and benefit mankind in general, or those in need of advancement and benefit in particular, without regard to their ability to supply that need from other sources, and without hope or expectation, if not with positive abnegation, of gain or profit by the donor or by the instrumentality of the charity."

**{¶ 20}** In *Socialer Turnverein v. Bd. of Tax Appeals* (1942), 139 Ohio St. 622, 23 O.O. 117, 41 N.E.2d 710, the court denied exemption for property very similar in function and operation to Donauschwaben's because its social activities fell "*** far short of meeting the plain requirements of [the predecessor to R.C. 5709.12]." *Id.* at 623, 23 O.O. at 117, 41 N.E. 2d at 710. The building there contained a kitchen, rathskeller, dining room, locker rooms, auditorium, small rooms, pool and billiard room, bowling alleys, and a large gymnasium. Its members paid dues to it, and some children who could not afford to join could participate in the gymnasium classes. The court denied exemption despite the open-membership policies of the society.

**{¶ 21}** Moreover, we reject Donauschwaben's criticism of *Socialer Turnverein.* Donauschwaben claims that, under *Galvin v. Masonic Toledo Trust* (1973), 34 Ohio St. 2d 157, 160, 63 O.O.2d 242, 244, 296 N.E.2d 542, 544, *Socialer Turnverein* is inconsistent with R.C. 5709.121 and must yield. However, as we have earlier concluded in following Justice Stern's words in *White Cross Hosp. Assn.*, the terms of R.C. 5709.121 are "not all encompassing." This statute sets forth terms to exempt property belonging to charitable institutions, which uses may not have qualified for exemption under earlier decisions interpreting R.C. 5709.12. "*** R.C. 5709.121 has no application to noncharitable institutions seeking tax

exemption under R.C. 5709.12*."* *White Cross Hosp. Assn.*, 38 Ohio St. 2d at 203, 67 O.O. 2d at 226, 311 N.E.2d at 864. That is, R.C. 5709.121 does not, nor does it purport to, exempt property belonging to noncharitable institutions claiming exemption for such property as used exclusively for charitable purposes.

{¶ 22} According to the evidence in this case, Donauschwaben does not advance or benefit mankind in general or those in need of advancement or benefit in particular; it benefits its members. Participation in Donauschwaben's activities requires one to be a dues-paying member. Isolated cases may exist where non-members participate in the activities; however, these instances were rare. Just as we did in *Socialer Turnverein v. Bd. of Tax Appeals; E. Cleveland Post No. 1500 v. Bd. of Tax Appeals* (1942), 139 Ohio St. 554, 23 O.O. 35, 41 N.E. 2d 242; and *In re Application of the Am. Legion* (1949), 151 Ohio St. 404, 39 O.O. 236, 86 N.E. 2d 467, we commend Donauschwaben for some of its charitable and civic activities that it undertakes on the property. Nevertheless, these activities do not transform this social and fraternal organization into a charitable institution.

{¶ 23} Second, reviewing the activities calendar, we see social and fraternal events, such as dinners and dances, fish fries, carnivals, Octoberfests, and balls. Since Donauschwaben chiefly conducts its social and fraternal activities on the property, it does not use the property exclusively for charitable purposes. Thus, Donauschwaben does not satisfy R.C. 5709.12, and we need not review R.C. 5709.121.

{¶ 24} Accordingly, we reverse the decision of the BTA as to its finding that Donauschwaben is a charitable institution and that the property qualifies for exemption under R.C. 5709.121. We hold, instead, that Donauschwaben is not a charitable institution and that it does not use the property exclusively for charitable purposes. We affirm that portion of the decision that found the bar and beer garden to be taxable.

*Decision affirmed in part*

*and reversed in part.*

MOYER, C.J., PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., dissent.

————————————

**DOUGLAS, J., dissenting.**

{¶ 25} I respectfully dissent.  I would affirm the decision of the BTA in its entirety.

RESNICK and F.E. SWEENEY, JJ., concur in the foregoing dissenting opinion.

————————————