**[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 48.]**

TRUE CHRISTIANITY EVANGELISM, APPELLANT, *v.* TRACY, TAX COMMR.,

APPELLEE.

[Cite as *True Christianity Evangelism v. Tracy*, 1999-Ohio-220.]

*Taxation—Real property—Exemptions—Board of Tax Appeals' determination that a two-story, three-bedroom house on a small lot owned by an Ohio non-profit corporation is not entitled to a charitable institution exemption is unreasonable and unlawful, when.*

(No. 98-2251—Submitted June 23, 1999—Decided October 13, 1999.)

APPEAL from the Board of Tax Appeals, No. 96-K-904.

———————————

{¶ 1} Appellant, True Christianity Evangelism, an Ohio non-profit corporation, seeks to exempt from real property taxation the property it owns on Cuyahoga Falls Avenue in Akron. The real property consists of a two-story, three-bedroom house on a small lot. The house is not open to the public, and it is not used for public worship services. The only person using the property is Jeffrey A. Botzko, president of appellant corporation and a minister. Botzko does not live in the house.

{¶ 2} In addition to appellant, two other entities headed by Botzko also use the house. One of the other entities is Kind and Decent Influence, also an Ohio non-profit corporation. Botzko says he uses the title of that organization when he is trying to persuade people in the music industry to live up to a higher moral standard. The third non-profit organization headed by Botzko that uses the house is The Sign Society for God, Christ and People. Botzko says he uses The Sign Society when he puts his moral messages on matchbooks and on signs along highways encouraging people to read and study the Bible and to live up to the Bible's standards. Botzko says the principles and goals of the organizations are the same, but he chooses which name he will use depending on the occasion.

**{¶ 3}** Botzko testified that in his "capacity as a minister I attempt to offer advice to the powers that be on how I think; that I could help society so that it would function in a more humane manner and cause more people to live up to better moral standards." He further testified that he uses the house "both in research and production of literature of doing self-educating to find out what can be done and what needs to be done." He stated that in the winter he does creative work, while in the summer he passes out literature at places like Blossom Music Center and the Cleveland Coliseum. The literature is intended to influence "everyone I can, in any way, to live up to the better moral standards of the Bible." His goals are to "inspire, enthuse, or to badger people into actually reading the Bible and finding out what it says and living up to its standards." In his literature Botzko asks for contributions; despite distributing a hundred thousand pieces of literature, he has had only one person send in twenty dollars. The total contributions from sources outside his family have amounted to only about thirty-two dollars in the last five years.

**{¶ 4}** In his attempt to offer advice to "benefit society," he also writes letters to government officials trying to get them to experiment with his idea on how to defuse hurricanes and tornadoes with explosives. He also has offered the government his concept of a laser beam landing system for aircraft. Appellant has not provided any grants or scholarships to anyone.

**{¶ 5}** Botzko keeps the books on tape and equipment that he uses to research and produce his handout literature and audiotapes in the house. He also keeps exercise equipment in the house, which he uses to stay in shape during the winter for the summer days when he hands out literature. Botzko also uses the house to store the clothing he wears when he works in the house or when he hands out his literature.

**{¶ 6}** The Board of Tax Appeals ("BTA") found that appellant was not a charitable institution and denied the exemption.

**{¶ 7}** This cause is now before this court upon an appeal as of right.

---

*Buckingham, Doolittle & Burroughs L.L.P.* and *William G. Nolan*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Phyllis J. Shambaugh*, Assistant Attorney General, for appellee.

---

*Per Curiam.*

{¶ 8} Appellant contends that it need not be a charitable institution to qualify for exemption under R.C. 5709.12. We agree.

{¶ 9} In its appeal to the BTA appellant sought exemption under R.C. 5709.12, contending its property was used exclusively for charitable purposes. Appellant has made it clear that it is not seeking exemption under that portion of R.C. 5709.07 that exempts "houses used exclusively for public worship."

{¶ 10} The constitutional authority for the exemption of property from taxation is contained in Section 2, Article XII of the Ohio Constitution, which provides:

"Without limiting the general power, subject to the provisions of Article I of this constitution, to determine the subjects and methods of taxation or exemptions therefrom, general laws may be passed to exempt * * * institutions used exclusively for charitable purposes * * *."

{¶ 11} In furtherance of this exclusive power to choose the subjects and to establish the criteria for exemption from taxation, the General Assembly has enacted R.C. 5709.12(B), which provides in part:

"Real * * * property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation."

{¶ 12} When considering a request for exemption under the portion of R.C. 5709.12(B) set forth above, the first point of inquiry must be whether the property belongs to an "institution."

{¶ 13} In *Highland Park Owners, Inc. v. Tracy* (1994), 71 Ohio St.3d 405, 407, 644 N.E.2d 284, 286, we referred to Black's Law Dictionary (6 Ed.1990) 800, for the definition of "institution" as:

"An establishment, especially one of eleemosynary or public character or one affecting a community. An established or organized society or corporation. It may be private in its character, designed for profit to those composing the organization, or public and charitable in its purposes, or educational (*e.g.* college or university)."

{¶ 14} Thus, since a corporation meets the definition of an "institution," appellant non-profit corporation cannot properly be disqualified from an exemption under R.C. 5709.12(B) on the basis that it is not an "institution."

{¶ 15} In commenting on R.C. 5709.12, in *White Cross Hosp. Assn. v. Bd. of Tax Appeals* (1974), 38 Ohio St.2d 199, 203, 67 O.O.2d 224, 226, 311 N.E.2d 862, 864, Justice Stern in his concurring opinion stated, "*[A]ny* institution, irrespective of its charitable or noncharitable character, may take advantage of a tax exemption if it is making exclusive charitable use of its property." Justice Stern went on to point out that "[t]he legislative definition of exclusive charitable use found in R.C. 5709.121, however, applies only to property 'belonging to,' *i.e., owned by*, a charitable or educational institution, or the state or political subdivision. The net effect of this is that R.C. 5709.121 has no application to noncharitable institutions seeking tax exemption under 5709.12." (Emphasis *sic*.) *Id.* While the nature of an institution seeking exemption for property under R.C. 5709.121 is relevant, the nature of the institution seeking an exemption under R.C. 5709.12(B) is not relevant. Unfortunately, the BTA went astray at this point. The BTA determined that appellant's "purpose is clearly to disseminate a religious message." The effect of the BTA's finding that appellant was a religious institution should have resulted in two conclusions by the BTA: (1) R.C. 5709.121 has no application, and (2) a further determination must be made whether the appellant's

4

use of the property was "exclusively for charitable purposes." Instead, the BTA erroneously considered the conclusion that appellant was a religious institution "to be dispositive of the present appeal." In addition, the BTA also erroneously found that appellant did not qualify for exemption under R.C. 5709.12 because it did not qualify as a charitable institution, "a condition precedent to entitlement to exemption under R.C. 5709.12."

{¶ 16} However, as pointed out above, the institution need not be charitable to be eligible for an exemption under R.C. 5709.12(B). The conclusion that a religious institution owns the property does not foreclose the possibility that the property is being used exclusively for charitable purposes. As we said in *Highland Park Owners*, "[T]o grant exemption under R.C. 5709.12, the arbiter must determine that (1) the property belongs to an institution, and (2) the property is being used exclusively for charitable purposes." 71 Ohio St.3d at 406, 644 N.E.2d at 286.

{¶ 17} The BTA did not make the second determination required by *Highland Park Owners.* Therefore, we remand this matter to the BTA to determine whether appellant's *use* of the property is "exclusively for charitable purposes." Because this court is not a trier of fact *de novo*, it is confined to its statutorily delineated duty (R.C. 5717.04) of determining whether the board's decision is "reasonable and lawful."

{¶ 18} Accordingly, we find the decision of the BTA to be unreasonable and unlawful, and, therefore, we reverse and remand this matter to the BTA for final determination consistent with this opinion.

*Decision reversed*
*and cause remanded.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

———————————