CASE WESTERN RESERVE UNIVERSITY, APPELLANT,
*v.* WILKINS, TAX COMMR., APPELLEE.

[Cite as *Case W. Res. Univ. v. Wilkins,*
105 Ohio St.3d 276, 2005-Ohio-1649.]

(No. 2003–0779—Submitted February 16, 2005—Decided April 20, 2005.)

PER CURIAM.

{¶ 1} Appellant, Case Western Reserve University ("CWRU"), has filed an application requesting a real-property tax exemption for a residential facility it owns known as Magnolia House ("House"). In 1997, CWRU entered into a memorandum of agreement ("Agreement") with the Zeta Pi Chapter of Alpha Phi Fraternity House Corporation ("House Corporation") for use of the House by the House Corporation for a term of ten years, with a renewal option. The preamble to the Agreement contained the following clauses:

{¶ 2} "Whereas the university currently provides exclusive use of the house * * * to [House Corporation] for purposes of housing members of its Zeta Pi Chapter [Alpha Phi sorority]* * *; and

{¶ 3} "Whereas the parties wish to define the terms and conditions governing [House Corporation's] ongoing use of the House to house members of the Chapter [Alpha Phi sorority]."

{¶ 4} The Agreement then states, "During the Term (as hereinafter defined), the House shall be made available to [House Corporation] solely for purposes of providing housing to Chapter [Alpha Phi sorority] members (and other individuals specified herein) * * *." Alpha Phi sorority members using the House are required to be students at CWRU and are required to sign a standard student-housing contract with CWRU. Alpha Phi is to provide a minimum of 30 individuals to live in the House during the fall and spring semesters and ten during the summer.

{¶ 5} During the fall and spring semesters, occupancy of the House is limited to members of the Zeta Pi chapter of Alpha Phi. However, during the summer term, pledges and national members of Alpha Phi can also use the House. The

House Corporation is to be "solely responsible for the selection of occupants and for the assignment of rooms in the House." CWRU is to provide one room in the House to the House Corporation without charge for an advisor to the Alpha Phi sorority.

{¶ 6} In addition, the House Corporation is to provide comprehensive general liability insurance, including coverage for property damage. Under the Agreement, CWRU is released from liability for damage or injury to any person or property, including the property of Alpha Phi, its members, guests, or invitees occasioned by its use of the House. The House Corporation also agrees to indemnify CWRU and hold it harmless against claims resulting from the corporation's use of the House.

{¶ 7} CWRU is to provide housekeeping and maintenance services, capital improvements, and replacement of furnishings for the House in accordance with CWRU's practices and policies.

{¶ 8} As a condition of membership in the sorority, the student is expected to sign a housing contract with CWRU to live in the House and not sign any other housing contract unless and until every available space in the House is filled and the student is released from the housing obligation.

{¶ 9} CWRU filed its application for real-property tax exemption on the House under R.C. 5709.07, 5709.12, and 5709.121. The Tax Commissioner denied the application, finding that use of the House was not open to the general student population. Instead, use of the House was restricted to a certain sorority. As a result, use of the House primarily benefited the sorority, and, therefore, the House was not eligible for exemption under R.C. 5709.07, 5709.12, or 5709.121.

{¶ 10} CWRU appealed the Tax Commissioner's decision to the Board of Tax Appeals ("BTA"). After a hearing, the BTA affirmed the Tax Commissioner's decision, finding that CWRU was not itself using the House, but had leased it to Alpha Phi, a private not-for-profit social organization, which was not an educational institution.

{¶ 11} This matter is before this court as an appeal as of right.

{¶ 12} The question to be determined by this court is whether the decision of the BTA denying exemption for the House is reasonable and lawful. When considering a request for exemption, we are mindful that we are to strictly construe statutes granting exemptions, and the burden rests on the one claiming an exemption to demonstrate that the property qualifies. *OCLC Online Computer Library Ctr., Inc. v. Kinney* (1984), 11 Ohio St.3d 198, 201, 11 OBR 509, 464 N.E.2d 572. The rationale for granting tax exemptions is that the recipient's operation is a present benefit to the general public that justifies the loss of tax

revenue. *White Cross Hosp. Assn. v. Bd. of Tax Appeals* (1974), 38 Ohio St.2d 199, 201, 67 O.O.2d 224, 311 N.E.2d 862.

{¶ 13} CWRU first contends that the House is entitled to exemption under R.C. 5709.12 and 5709.121(A) because the House belongs to an educational institution and is used by it for educational purposes. The specific provision of R.C. 5709.12 relied upon by CWRU is R.C. 5709.12(B), which provides: "Real * * * property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation * * *." Thus, to be exempt, the real property must (1) belong to an institution and (2) be used exclusively for charitable purposes.

{¶ 14} There is no dispute concerning the fact that the House belongs to CWRU. However, we must determine whether the House belongs to an "institution." To determine whether CWRU is an "institution" for the purposes of R.C. 5709.12, we turn to our decision in *Highland Park Owners Inc. v. Tracy* (1994), 71 Ohio St.3d 405, 407, 644 N.E.2d 284, where we quoted Black's Law Dictionary (6th Ed.1990) 800, for the following definition of "institution":

{¶ 15} " 'An establishment, especially one of eleemosynary or public character or one affecting a community. An established or organized society or corporation. It may be private in its character, designed for profit to those composing the organization, or public and charitable in its purposes, or educational (*e.g.* college or university).' "

{¶ 16} CWRU is an Ohio not-for-profit corporation formed for the purpose of operating a university exclusively for charitable, scientific, and educational purposes. Applying the definition of "institution" to the facts, we hold that the evidence supports the BTA's finding that CWRU qualifies as an educational "institution" for the purposes of R.C. 5709.12(B) and that the House belongs to an institution.

{¶ 17} The next step in establishing entitlement to an exemption under R.C. 5709.12(B) is to determine whether the House belonging to the institution is being "used exclusively for charitable purposes." R.C. 5709.121 sets forth a definition of the phrase "used exclusively for charitable purposes." However, that definition is applicable only in certain circumstances. In *Episcopal Parish of Christ Church, Glendale v. Kinney* (1979), 58 Ohio St.2d 199, 200–201, 12 O.O.3d 197, 389 N.E.2d 847, the court cited with approval Justice Stern's concurring opinion in *White Cross Hosp. Assn. v. Bd. of Tax Appeals,* 38 Ohio St.2d at 203, 67 O.O.2d 224, 311 N.E.2d 862, which explained the relationship between R.C. 5709.12 and R.C. 5709.121 as follows:

{¶ 18} "Initially, it is important to observe that, although R.C. 5709.121 purports to define the words used exclusively for 'charitable' or 'public' purposes, as those words are used in R.C. 5709.12, the definition is not all-encompassing.

R.C. 5709.12 states: "* * * Real and tangible personal property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation.' Thus, *any* institution, irrespective of its charitable or noncharitable character, may take advantage of a tax exemption if it is making exclusive charitable use of its property. See *Wehrle Foundation v. Evatt* (1943), 141 Ohio St. 467 [26 O.O. 29], 49 N.E.2d 52. The legislative definition of exclusive charitable use found in R.C. 5709.121, however, applies only to property 'belonging to' *i.e., owned by,* a charitable or educational institution, or the state or a political subdivision. The net effect of this is that R.C. 5709.121 has no application to noncharitable institutions seeking tax exemption under R.C. 5709.12. Hence, the first inquiry must be directed to the nature of the institution applying for an exemption." (Emphasis sic.)

{¶ 19} Since the House is owned by CWRU, an educational institution, the definition of "used exclusively for charitable purposes" in R.C. 5709.121 is applicable.

{¶ 20} CWRU claims exemption for the House under two different provisions, R.C. 5709.121(A)(2) and 5709.121(B).

{¶ 21} R.C. 5709.121(A)(2) provides:

{¶ 22} "Real property * * * belonging to a[n] * * * educational institution * * * shall be considered as used exclusively for charitable * * * purposes by such institution * * * if it meets one of the following requirements:

{¶ 23} "(A) It is used by such institution * * * or by one or more other such institutions * * *under a lease, sublease, or other contractual arrangement:

{¶ 24} "* * *

{¶ 25} "(2) For other charitable, educational, or public purposes."

{¶ 26} CWRU contends that the House is exempt under R.C. 5709.121(A)(2) because it is being used for educational purposes. In his concurring opinion in *White Cross Hosp. Assn.,* Justice Stern set forth the following statement concerning R.C. 5709.121(A)(2):

{¶ 27} "If a qualified institution * * * owns property, that property is exempt from taxation if (1) the institution * * * itself uses the property as specified in R.C. 5709.121(A)(1) or (A)(2); [or] (2) the institution * * * contractually allows another qualified institution * * * to use the property as specified in R.C. 5709.121(A)(1) or (A)(2) * * *." Id., 38 Ohio St.2d at 203, 67 O.O.2d 224, 311 N.E.2d 862.

{¶ 28} R.C. 5709.121(A)(2) is not applicable to the facts of this case. First, CWRU is not using the House itself. The House is being used exclusively by the House Corporation to house the members of the Alpha Phi sorority under a contractual arrangement with CWRU. No claim is made that the House Corpora-

tion with which CWRU contracted is a qualified institution, i.e., a charitable or educational institution and, indeed, it is neither. The BTA found that Alpha Phi sorority, which is using the House, "is a private not-for-profit social organization, and not an educational institution." Because the House Corporation's exclusive use of the House is not an educational use, the House is not exempt under R.C. 5709.121(A)(2).

{¶ 29} CWRU's second contention is that the House is exempt under R.C. 5709.121(B) because it is "under the direction or control" of CWRU and is being made available "for use in furtherance of or incidental to [CWRU's] * * * educational * * * purposes and not with the view to profit." In *Cincinnati Nature Ctr. Assn. v. Bd. of Tax Appeals* (1976), 48 Ohio St.2d 122, 125, 2 O.O.3d 275, 357 N.E.2d 381, the court set forth a three-pronged test to determine whether real property belonging to a charitable or educational institution falls within the terms of R.C. 5709.121(B). In order to meet the test, the property must "(1) be under the direction or control of [such an] institution or state or political subdivision, (2) be otherwise made available 'for use in furtherance of or incidental to' the institution's 'charitable [educational] or public purposes,' and (3) not be made available with a view to profit."

{¶ 30} The first prong of the three-pronged *Cincinnati Nature* test requires in this case that the property be under the direction or control of an educational institution. The actual wording of the statute requires that the property be "made available" under the direction or control of an educational institution. There apparently is no disagreement that the House is made available under the direction or control of CWRU, as evidenced by the Agreement between CWRU and the House Corporation.

{¶ 31} The second prong of the *Cincinnati Nature* test is that the property be made available "for use in furtherance of or incidental to" the institution's educational purposes. Id., 48 Ohio St.2d at 125, 2 O.O.3d 275, 357 N.E.2d 381. The BTA was not persuaded that providing housing for the "exclusive use of a social sorority and its members is in furtherance of CWRU's educational purpose." Unlike the other residence halls at CWRU, occupancy of the House is not open to just any student enrolled at CWRU. Instead, use of the House is limited to students who are members of a private sorority. CWRU is providing housing for the exclusive use of a private fraternal organization. We do not believe that it is a function of a college or university to furnish a dwelling to a private social organization to use at its discretion. In providing the House, CWRU benefits the House Corporation and the local chapter of the Alpha Phi sorority, thereby relieving them of the obligation to provide a dwelling to the sorority members. However, providing housing for the exclusive use of a private fraternal organization is not in furtherance of or incidental to CWRU's educational purpose. The

House is not exempt under R.C. 5709.12 and 5709.121(B). Because we have determined that the use of the House does not meet the second prong of the three-pronged *Cincinnati Nature* test, we need not consider the third prong.

{¶ 32} This court has previously considered facts similar to those in this case in *Denison Univ. v. Bd. of Tax Appeals* (1962), 173 Ohio St. 429, 20 O.O.2d 63, 183 N.E.2d 773 *("Denison I")*. Admittedly, *Denison I* was decided before the enactment of R.C. 5709.121 in 1969. 133 Ohio Laws, Part III, 2646. We believe, however, that the result in *Denison I* is consistent with the result that would be reached under R.C. 5709.121. In *Denison I,* Denison University sought exemption for nine fraternity houses that had been built on land owned by the university and leased to the fraternities. Eight of the fraternities leased the land for 99 years, renewable forever, with a termination clause that could be exercised by the university. The remaining fraternity house had a renewable one-year lease with the university. All but one of the houses were constructed and paid for by the fraternities.

{¶ 33} This court held in the syllabus of *Denison I* that the fraternity houses constructed and paid for by the fraternities on land owned in fee simple by a university and leased to the fraternities were not exempt because they were "not 'used *exclusively* for charitable purposes' within the purview of Section 5702.12, Revised Code, and Section 2, Article XII of the [Ohio] Constitution." (Emphasis sic.)

{¶ 34} CWRU's final contention is that the House is exempt under R.C. 5709.07(A)(4) because it is a building connected with a public institution of learning and is not used with a view to profit. R.C. 5709.07(A)(4) exempts from taxation "[p]ublic colleges * * * and all buildings connected with them, and all lands connected with public institutions of learning, not used with a view to profit."

{¶ 35} In *Denison Univ. v. Bd. of Tax Appeals* (1965), 2 Ohio St.2d 17, 31 O.O.2d 10, 205 N.E.2d 896 *("Denison II")*, we held that Denison University was a public college within the meaning of R.C. 5709.07, stating at paragraph one of the syllabus:

{¶ 36} "The words 'public colleges * * * academies * * * and public institutions of learning' in Section 5709.07, Revised Code, include a private institution of learning conducted in a lawful manner without any view to profit and open to all members of the public without regard to race, creed or nationality. (Paragraph eight of the syllabus of *Gerke, Treas., v. Purcell,* 25 Ohio St. 229, approved and followed.)" (Ellipses sic.)

{¶ 37} Thus, just as Denison University was a public college for the purposes of R.C. 5709.07, so also is CWRU a "public college" for the purposes of R.C. 5709.07.

{¶ 38} In *Denison II,* the university sought exemption for buildings owned by it and used for a carpentry shop, a lumber storage shed for lumber used in the carpentry shop, a Quonset hut used by university painting crews to paint college equipment and for storage of maintenance equipment, a dwelling lived in by a caretaker of the facilities and his family, and a pole shelter used to store hay for the horses used in a physical education course. In addition, the university also sought exemption for the on-campus president's house and an off-campus guest house used to provide lodging for official guests of the university. A caretaker lived in part of the guest house. The university sought exemption for its properties under both R.C. 5709.07 and 5709.12, but the court considered only R.C. 5709.07.

{¶ 39} After finding that Denison was a public college and a public institution of learning within the meaning of R.C. 5907.07, the court stated:

{¶ 40} "Every other question involved in the instant case was considered and decided by this court in 1909 when it affirmed without opinion (*[Schnebly v. Kenyon College* (1909),] 81 Ohio St. 514, 91 N.E. 1138) the decision of the Circuit Court of Knox County in *Kenyon College v. Schnebly, Treas.* (1909), 12 C.C. (N.S.) 1, which held that, by reason of what is now Section 5709.07, Revised Code, 'residences occupied by the president and professors and janitor are exempt [from taxation], as is also vacant land from which no revenue is derived * * *.'

{¶ 41} "We agree with the statements of the Circuit Court in that case that 'the plain language of the statute is "all public colleges, public academies, all buildings connected with the same, are exempt" and we think it was the purpose to exempt all buildings that were with *reasonable certainty* used in furthering or carrying out the necessary objects and purposes of the college,' and that the 'statute is clear, that all lands connected with public institutions of learning, *"not used with a view to profit"* are exempt.' " (Emphasis sic.) Id. at 21, 31 O.O.2d 10, 205 N.E.2d 896.

{¶ 42} In paragraph two of the syllabus in *Denison II* the court approved and followed *Kenyon College v. Schnebly* as authority for its holding:

{¶ 43} "All buildings connected with such a public college or academy and used with reasonable certainty in furthering or carrying out the necessary objects and purposes of such academy or college, including the president's residence, and all lands connected with such a public institution of learning and not used with a view to profit are exempted from taxation by Section 5709.07, Revised Code."

{¶ 44} The BTA found that the Alpha Phi "sorority's right to the exclusive use of the subject property is not an educational use by CWRU under R.C. 5709.07." We agree.

{¶ 45} As the court held in paragraph two of the syllabus of *Denison II,* the exemption in R.C. 5709.07 is for buildings connected with the college and used with reasonable certainty in furthering and carrying out the necessary objects and purposes of the college. While providing residences for its students may further and carry out the necessary objects and purposes of a college, we do not believe that the furnishing of a college building to a private fraternal organization to exclusively house its members is a necessary object or purpose for a college or university. The House is not being used by CWRU to house its students. Instead, the House is being used by the House Corporation to house members of the Alpha Phi sorority.

{¶ 46} Although it may not be necessary to the denial of the exemption in this case, we feel we would be remiss if we did not discuss R.C. 5709.07(B), which provides: "This section shall not extend to leasehold estates or real property held under the authority of a college or university of learning in this state * * *."

{¶ 47} While exemption of the fraternity houses in *Denison I* was denied under R.C. 5709.12, exemption under R.C. 5709.07 apparently was raised as an issue in the university's brief even though it was not raised in the university's notice of appeal. Id., 173 Ohio St. at 429, 20 O.O.2d 63, 183 N.E.2d 773. In commenting on the sentence that is now contained in R.C. 5709.07(B), the court in *Denison I* stated, "[I]t will be noted that, according to the express provisions of the last sentence above quoted, the entire section is expressly made inapplicable 'to leasehold estates or real property held under the authority of a college or university of learning in this state.' " Id. at 437, 20 O.O.2d 63, 183 N.E.2d 773. While there are exceptions to that clause in R.C. 5709.07(B), none of those exceptions are applicable here. Instead, R.C. 5709.07(B) precludes an exemption in this case because the House Corporation is holding real property "under the authority of a college or university of learning in this state."

{¶ 48} Colleges and academies have been granted an extremely broad exemption by R.C. 5709.07. However, the General Assembly placed limits on that exemption by providing that it does not extend to leasehold estates or real property held under authority of a college or university.

{¶ 49} For all of the reasons set forth above, we find that the decision of the BTA was reasonable and lawful and affirm it.

Decision affirmed.

MOYER, C.J., RESNICK, PFEIFER, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

LUNDBERG STRATTON, J., dissents.

LUNDBERG STRATTON, J., dissenting.

{¶ 50} I believe that Magnolia House should be exempt from taxation because the House "is made available under the direction" of CWRU and used "in furtherance of or incidental to" CWRU's educational purposes under R.C. 5709.121. Therefore, I respectfully dissent.

{¶ 51} Pursuant to R.C. 5709.121 and 5709.121(B), property that is "used exclusively for charitable or public purposes" by an educational institution includes property that "is made available under the direction or control of such institution * * * for use *in furtherance of* or *incidental to* its * * * educational * * * purposes and not with the view to profit." (Emphasis added.)

{¶ 52} Thus, in order to be tax exempt under this provision, the property (1) must be "made available under the direction or control" of a charitable or educational institution, (2) must be made available "for use in furtherance of or incidental to" the institution's charitable, educational, or public purposes, and (3) must be made available without an intent to profit. *Cincinnati Nature Ctr. Assn. v. Bd. of Tax Appeals* (1976), 48 Ohio St.2d 122, 125, 2 O.O.3d 275, 357 N.E.2d 381.

{¶ 53} The majority's holding turns primarily on its determination that the House was not used *exclusively* for CWRU's educational purposes. The majority states that "CWRU is providing housing for the exclusive use of a private fraternal organization. We do not believe that it is a function of a college or university to furnish a dwelling to a private social organization to use at its discretion." In support the majority cites *Denison Univ. v. Bd. of Tax Appeals* (1962), 173 Ohio St. 429, 20 O.O.2d 63, 183 N.E.2d 773.

{¶ 54} The majority also supports its holding by pointing out that the House is available only to members of Alpha Phi as opposed to the general student population. The majority cites *White Cross Hosp. Assn. v. Bd. of Tax Appeals* (1974), 38 Ohio St.2d 199, 201, 67 O.O.2d 224, 311 N.E.2d 862, for the proposition that the rationale for granting tax exemptions is that the recipient's operation is a present benefit to the general public that justifies the loss of tax revenue.

## A. Under R.C. 5709.121(B), Use Need Not Be Exclusive

{¶ 55} In *Denison*, Denison University sought tax exemptions under R.C. 5709.12 for nine buildings that were leased to nine fraternities. The BTA determined that the buildings were " 'operated under lease by fraternities for fraternity purposes, and but *one* of the many uses, for which the fraternities use these buildings, is that of providing lodging for *fraternity members only.*' " (Emphasis sic.) Id., 173 Ohio St. at 434, 20 O.O.2d 63, 183 N.E.2d 773. The board also found that " 'these buildings were *not used exclusively* for charitable

purposes within the meaning of those words as used in the Ohio Constitution and in Revised Code Section 5709.12.'" (Emphasis sic.) Id. at 439, 20 O.O.2d 63, 183 N.E.2d 773. This court affirmed the BTA's decision.

{¶ 56} *Denison* relied on R.C. 5709.12. However, seven years after the court decided *Denison,* the General Assembly enacted R.C. 5709.121. 133 Ohio Laws, Part III, 2646. R.C. 5709.12(B) still provides that in order to be tax exempt, property belonging to *any* institution must be used *exclusively* for charitable purposes.[1] However, R.C. 5709.121(B) provides that property belonging to a charitable or *educational* institution or the state or a political subdivision is "used exclusively for charitable or public purposes" if "[i]t is made available under the direction or control of such institution * * * for use *in furtherance of or incidental to*" the institution's educational purpose. As Justice Herbert stated, "By the enactment of R.C. 5709.121, the General Assembly has announced its desire that certain types of tax exemptions for the institutions mentioned in that statute should not be restrictively considered." *White Cross Hosp. Assn.,* 38 Ohio St.2d at 205, 67 O.O.2d 224, 311 N.E.2d 862 (Herbert, J., dissenting). Thus, under the broadened definition of the phrase "used exclusively for charitable or public purposes" in R.C. 5709.121, property belonging to a charitable or educational institution or the state or political subdivision may be exempt from taxation even if its use is not "exclusively" charitable. *Galvin v. Toledo Trust* (1973), 34 Ohio St.2d 157, 159–160, 63 O.O.2d 242, 296 N.E.2d 542.

{¶ 57} Therefore, cases that rely on the exclusive-use test under R.C. 5709.12, such as *Denison,* are not persuasive in determining whether property is exempt from taxation under R.C. 5709.121(B). See *Galvin,* paragraph one of the syllabus. Accordingly, I believe that the majority's reliance on *Denison* is misplaced.

{¶ 58} Admittedly, Alpha Phi uses the House for some activities that may not be in furtherance of or incidental to CWRU's educational purpose, such as social gatherings. However, similar social activities occur at other nonfraternal residence halls, and those activities do not disqualify those properties from being exempt from taxation.

{¶ 59} Moreover, pursuant to the agreement through which CWRU permits Alpha Phi use of the House, all the residents must be CWRU students. The fact that these students are also members of the Alpha Phi sorority does not diminish their status as CWRU students. Thus, irrespective of other uses, the House is

---

1. As the majority notes, R.C. 5709.12 applies to use of property belonging to *any* institution, including noncharitable institutions, but R.C. 5709.121 is limited to use of property belonging to a *charitable* or *educational* institution or the state or a political subdivision.

used to house CWRU students, which is a use in furtherance of CWRU's educational purpose.

{¶ 60} Finally, I also believe that Alpha Phi uses the House in other ways that are in furtherance of or incidental to CWRU's educational purposes. Part of CWRU's educational mission is encouraging students to become involved in the community. Greek organizations provide a formal approach to promoting community service. CWRU encourages Greek organizations, including Alpha Phi, to participate in charitable activities through the Panhellenic Council and Intrafraternal Conference in a program called "365 Days of Service" through which each Greek organization develops a quota of hours for community service. Thus, Alpha Phi certainly uses the House for activities that promote CWRU's educational purposes.

## B.   Under R.C. 5709.121, the Property Need
## Not Be Made Available to the Public

{¶ 61} The majority seems to suggest that because the property is being used by members of a private entity to the exclusion of the general student population, a tax exemption should not apply, because "[t]he rationale for granting tax exemptions is that the recipient's operation is a present benefit to the general public that justifies the loss of tax revenue," citing *White Cross Hosp.*, 38 Ohio St.2d at 201, 67 O.O.2d 224, 311 N.E.2d 862.

{¶ 62} In *Cincinnati Nature Ctr.*, 48 Ohio St.2d 122, 2 O.O.3d 275, 357 N.E.2d 381, the Cincinnati Nature Center Association ("Nature Center"), a nonprofit entity, sought a tax exemption under R.C. 5709.121 for a parcel of property containing two houses owned by the Nature Center and used as residences by its employees. The BTA granted the exemption as to the acreage but denied the exemption as to the houses. The court of appeals reversed the BTA on the grounds that " 'the use of the two houses by employees of the Nature Center was in furtherance of and incidental to its charitable purpose and was not with a view to "profit" under R.C. 5709.121.' " Id. at 123, 2 O.O.3d 275, 357 N.E.2d 381.

{¶ 63} On appeal, the BTA argued that under R.C. 5709.121, the property must be made available for use by the public. However, after examining the language of R.C. 5709.121, the court found that "the board's contentions that exempt property must be made available to another charitable institution or to the public are without merit." Id. at 125–126, 2 O.O.3d 275, 357 N.E.2d 381.

{¶ 64} Therefore, the fact that residency in the House is limited to Alpha Phi members and is not open to the general student population does not preclude a finding that the house is exempt from taxation under R.C. 5709.121.

## C. The House Was Not Used with View to Profit

{¶ 65} The majority did not address this issue because it found that the second prong of the *Cincinnati Nature* test was dispositive. However, because I believe that the House satisfies the first two prongs of the *Cincinnati Nature* test, I will address the third prong, which requires that the property must be made available without an intent to profit. *Cincinnati Nature Ctr.*, 48 Ohio St.2d at 125, 2 O.O.3d 275, 357 N.E.2d 381.

{¶ 66} The record indicates that the House is not used with an intent to make a profit. The students who live at the House pay CWRU for the housing pursuant to a standard student housing contract. CWRU merely seeks to generate a revenue stream that covers the cost of operating the House. Any surplus revenue would be reinvested in the facilities.

## D. Conclusion

{¶ 67} Accordingly, I would hold that Alpha Phi's use of the House is in furtherance of or incidental to CWRU's educational purposes and not with a view to profit under R.C. 5709.121(B). Therefore, the House should be exempt from taxation pursuant to R.C. 5709.12. Thus, I respectfully dissent.

---

Taft, Stettinius & Hollister, L.L.P., Joel A. Makee, Bruce L. Waterhouse Jr., and Colleen G. Treml, for appellant.

Jim Petro, Attorney General, and Janyce C. Katz, Assistant Attorney General, for appellee.