FIRST BAPTIST CHURCH OF MILFORD, INC., APPELLANT,
*v.* WILKINS, TAX COMMR., APPELLEE.

[Cite as *First Baptist Church of Milford v. Wilkins,*
110 Ohio St.3d 496, 2006-Ohio-4966.]

(No. 2005–1683—Submitted April 25, 2006—Decided October 11, 2006.)

ALICE ROBIE RESNICK, J.

{¶ 1} Appellant, First Baptist Church of Milford, Inc. ("First Baptist"), is a nonprofit corporation that owns a 67–acre tract of land in Clermont County. A church building, a school, and a print shop are located on the tract. The print shop, the addition attached to it, and the land they occupy are the subject of an application for real property tax exemption filed by First Baptist for tax year 2000 on the basis that they are used exclusively for charitable purposes.

{¶ 2} The print shop is not used by First Baptist. The print shop and its office are used by a separate nonprofit corporation, which originally was known as First Baptist Church Scripture Publishing Ministry, Inc., but has since changed its name to Bearing Precious Seed—Milford, Inc. ("BPS"). The trustees of BPS are the same as those of First Baptist. There are no written agreements between First Baptist and BPS for BPS's use of the print shop, and BPS does not pay any rent to First Baptist. BPS has its own staff, pays its own employees, and pays the utilities for the print shop. Two apartments attached to the print shop are occupied by persons associated with either First Baptist or BPS.

{¶ 3} BPS uses the print shop to conduct its primary business, which is printing Bibles in numerous languages and distributing them free of charge throughout the world. BPS is financed by gifts and contributions from churches and individuals.

{¶ 4} In addition to its primary business, BPS also conducts a second operation in the print shop under the name JB Printing ("JB"). JB is not a separate legal entity. JB operates within BPS, using the same employees and equipment to do custom printing for churches or persons affiliated with a church. A witness for First Baptist testified before the Board of Tax Appeals ("BTA"), stating, "JB will print a book if somebody would want a book." BPS also prints Sunday school materials for a separate entity named Master Ministries. Finally, BPS also

prints school catalogs for Biblical School World of Evangelism. All of these additional printing activities of BPS were accounted for under JB.

{¶ 5} JB pays for its printing activities through sales and contributions. Exhibits produced at the BTA hearing showed that for the year 2000, 2.09 percent of the books printed by BPS were for JB, and the $219,890 of income attributable to JB for that year represented about 12 percent of BPS's income. BPS's income attributable to JB was three percent for 2001, 12 percent for 2002, and seven percent for 2003.

{¶ 6} The Tax Commissioner denied First Baptist's application for exemption under R.C. 5709.12 and 5709.121. The commissioner found R.C. 5709.121 inapplicable because First Baptist was not a charitable, educational, or public entity. In addition, the commissioner found that the activities of JB were not charitable. Finally, the Tax Commissioner denied exemption for the two apartments.

{¶ 7} The BTA affirmed the Tax Commissioner's final determination.

{¶ 8} This cause is now before this court upon an appeal as of right.

{¶ 9} When reviewing decisions of the BTA, this court is not a trier of fact de novo, but is confined by R.C. 5717.04 to determining whether the BTA's decision is reasonable and lawful. *Episcopal Parish of Christ Church, Glendale v. Kinney* (1979), 58 Ohio St.2d 199, 201, 12 O.O.3d 197, 389 N.E.2d 847. However, facts determined by the BTA must be supported by sufficient probative evidence. *Hawthorn Mellody, Inc. v. Lindley* (1981), 65 Ohio St.2d 47, 19 O.O.3d 234, 417 N.E.2d 1257, syllabus.

{¶ 10} The party claiming an exemption bears the burden of demonstrating that the property qualifies for exemption. *OCLC Online Computer Library Ctr., Inc. v. Kinney* (1984), 11 Ohio St.3d 198, 201, 11 OBR 509, 464 N.E.2d 572. Laws that exempt property from taxation must receive a strict construction because such laws are in derogation of equal rights. *Cincinnati College v. State* (1850), 19 Ohio 110, 115. In *White Cross Hosp. Assn. v. Bd. of Tax Appeals* (1974), 38 Ohio St.2d 199, 201, 67 O.O.2d 224, 311 N.E.2d 862, the court stated that when an exemption is granted by the General Assembly, "[t]he rationale justifying a tax exemption is that there is a present benefit to the general public from the operation of the charitable institution sufficient to justify the loss of tax revenue."

{¶ 11} In its application for real property tax exemption, First Baptist claimed exemption for the print shop and apartments under R.C. 5709.12 and 5709.121. However, in its appeal to this court, First Baptist has abandoned any claim that R.C. 5709.121 applies and relies solely on R.C. 5709.12(B) for its claim of exemption. R.C. 5709.12(B) provides: "Real and tangible personal property belonging to institutions that is used exclusively for charitable purposes shall be

exempt from taxation." The question in this case is whether the property at issue is used exclusively for charitable purposes.

{¶ 12} In *Zangerle v. State ex rel. Gallagher* (1929), 120 Ohio St. 139, 165 N.E. 709, an action was brought to restrain the county auditor from removing certain property from the tax duplicate that had been exempted by the tax commission under G.C. 5353 (now R.C. 5709.12). In a concurring opinion, written by Justice Day and joined by two other justices, Justice Day stated his opinion that "by the provisions of [G.C. 5353] and of the Constitution, ownership and use for charitable purposes must coincide." Id. at 145, 165 N.E. 709 (Day, J., concurring). The court took that same position in *Lincoln Mem. Hosp., Inc. v. Warren* (1968), 13 Ohio St.2d 109, 42 O.O.2d 327, 235 N.E.2d 129, in which the owner of the property, a for-profit corporation, had leased a hospital to a separate nonprofit corporation. Exemption was sought under R.C. 5709.12. The court upheld the BTA's denial of an exemption for the property, finding that the use the owner of the property made of the property was in the nature of a rental arrangement to another and not a use by it exclusively for charitable purposes. In its opinion in *Lincoln Mem. Hosp.* denying the exemption, the court cited *Zangerle* and stated: "[I]t is apparent that the then members of this court were agreed that to exempt real property from taxation on the ground that it is used exclusively for charitable purposes the ownership of the property and its use must coincide." Id. at 110, 42 O.O.2d 327, 235 N.E.2d 129.

{¶ 13} To fully understand why the ownership and use must coincide for exemption under R.C. 5709.12, we must consider the relationship between R.C. 5709.12 and 5709.121. Soon after the court decided *Lincoln Mem. Hosp.*, the General Assembly passed Am.Sub.H.B. No. 817, 133 Ohio Laws, Part III, 2646, which enacted R.C. 5709.121. The title of Am.Sub.H.B. No. 817 stated that it was to "clarify the exemption from taxation of property belonging to a charitable institution, the state, or its political subdivisions and used by another charitable institution for exempt purposes."

{¶ 14} In his concurring opinion in *White Cross Hosp. Assn.*, which was adopted by the court in *Episcopal Parish of Christ Church, Glendale v. Kinney* (1979), 58 Ohio St.2d 199, 200–201, 12 O.O.3d 197, 389 N.E.2d 847, Justice Stern explained the difference between R.C. 5709.12 and 5709.121, as follows:

{¶ 15} "Initially, it is important to observe that, although R.C. 5709.121 purports to define the words used exclusively for 'charitable' or 'public' purposes, as those words are used in R.C. 5709.12, the definition is not all-encompassing. R.C. 5709.12 states: ' * * * Real and tangible personal property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation.' Thus, *any* institution, irrespective of its charitable or non-charitable character, may take advantage of a tax exemption if it is making exclusive

charitable use of its property. See *Wehrle Found. v. Evatt* (1943), 141 Ohio St. 467 [26 O.O. 29], 49 N.E.2d 52. The legislative definition of exclusive charitable use found in R.C. 5709.121, however, applies only to property 'belonging to,' *i.e.*, *owned by*, a charitable or educational institution, or the state or a political subdivision. The net effect of this is that R.C. 5709.121 has no application to noncharitable institutions seeking tax exemption under R.C. 5709.12. Hence, the first inquiry must be directed to the nature of the institution applying for an exemption." (Emphasis and ellipsis sic.) *White Cross Hosp. Assn.*, 38 Ohio St.2d at 203, 67 O.O.2d 224, 311 N.E.2d 862 (Stern, J., concurring).

{¶ 16} Justice Stern then went on to state: "In my view, the overall purpose of R.C. 5709.121 is to declare that the ownership and use of property need not coincide for that property to be tax exempt." Id. R.C. 5709.121 does not itself grant any exemption. It merely sets forth certain situations in which real and personal property belonging to charitable or educational institutions or to the state or a political subdivision may be considered as used exclusively for charitable or public purposes. In some of the situations described in R.C. 5709.121, ownership and use do not coincide. If the ownership and use of the property do not coincide and the situation is not one described in R.C. 5709.121, no exemption can be granted under that portion of R.C. 5709.12 that excepts property used exclusively for charitable purposes. First Baptist does not claim that any of the situations set forth under R.C. 5709.121 are applicable to the facts of this case.

{¶ 17} First Baptist contends in its first proposition of law that "[o]wnership of real property by religious 'institutions,' if other tests are met, qualifies for tax exemption under R.C. § 5709.12." Ownership by a religious institution does not disqualify property from being considered for exemption under R.C. 5709.12. *True Christianity Evangelism v. Zaino* (2001), 91 Ohio St.3d 117, 118, 742 N.E.2d 638. If a religious institution is itself using its property exclusively for charitable purposes, then the property could be considered for exemption. However, where, as here, the owner (First Baptist) is seeking an exemption based on a use of its property by a separate corporation, BPS, and the owner does not justify exemption by establishing any of the situations described in R.C. 5709.121, the property is not exempt under R.C. 5709.12.

{¶ 18} The court has previously considered a situation in which a church sought exemption for property owned by it, but used by another entity. In *Summit United Methodist Church v. Kinney* (1982), 2 Ohio St.3d 72, 2 OBR 628, 442 N.E.2d 1298, the court considered an application for exemption filed by Summit United Methodist Church for a house it owned. Part of the house was rented to Citizens Crime Reporting Project, a nonprofit organization. The remainder of the house was occupied by Choices, a nonprofit corporation that provided shelter

to victims of domestic violence. In affirming the BTA's denial of exemption, the court stated that the taxpayer "was primarily a religious institution and therefore not entitled to tax exemption under R.C. 5709.12 and 5709.121." We have since recognized that religious institutions are not excluded from the application of R.C. 5709.12. *True Christianity Evangelism*, 91 Ohio St.3d at 118, 742 N.E.2d 638, disapproving *Summit United.* However, in order for its property to be considered for exemption under R.C. 5709.12, the religious institution must itself be using the property exclusively for charitable purposes.

{¶ 19} First Baptist also contends that the apartments attached to the print shop should be exempted under R.C. 5709.12. Because R.C. 5713.04 permits split listing for exemption purposes, we consider whether the apartments, separate from the print shop, qualify for exemption.

{¶ 20} It is unclear from the evidence who actually controls the use of the two apartments attached to the print shop. There is no evidence that any of the persons who occupy the apartments perform any function for First Baptist or BPS that would make it crucial for that person to be housed in these apartments. The apartments are being used as personal residences.

{¶ 21} In *W. Res. Academy v. Bd. of Tax Appeals* (1950), 153 Ohio St. 133, 41 O.O. 192, 91 N.E.2d 497, the court had before it the question of whether certain houses in which some of the faculty of Western Reserve Academy were required to live should be exempted under the authority of what is now R.C. 5709.12. The court denied the exemption, stating, "Residence in a dwelling with a family must necessarily be a private use of the premises. Where the exercise of such private rights constitutes the primary use of property, * * * such property is no longer used exclusively for a charitable purpose." Id. at 136, 41 O.O. 192, 91 N.E.2d 497.

{¶ 22} We recognize that *W. Res. Academy* was decided before the enactment of R.C. 5709.121. However, the case is relevant here because First Baptist does not contend that any of the situations described in R.C. 5709.121 are applicable.

{¶ 23} For all of the foregoing reasons, the decision of the BTA was reasonable and lawful, and we affirm it.

Decision affirmed.

MOYER, C.J., O'CONNOR and LANZINGER, JJ., concur.

PFEIFER, LUNDBERG STRATTON and O'DONNELL, JJ., concur in part and dissent in part.

———————

**LUNDBERG STRATTON, J., concurring in part and dissenting in part.**

{¶ 24} I concur with the majority, except I would find that the print shop property is exempt from taxation under R.C. 5709.12(B) because First Baptist

uses the print shop exclusively for a charitable purpose, printing Bibles. Thus, I respectfully concur in part and dissent in part.

## I. R.C. 5709.12(B)

{¶ 25} "To be exempted from taxation under R.C. 5709.12, the property must (1) belong to an institution and (2) be used exclusively for charitable purposes." *True Christianity Evangelism v. Zaino* (2001), 91 Ohio St.3d 117, 118, 742 N.E.2d 638.

### A. First Baptist Is an Institution

{¶ 26} In *True Christianity Evangelism*, we held that "religious institutions are not excluded from the application of R.C. 5709.12," because R.C. 5709.12 refers only to an "institution" without limitation. Id. at 120, 742 N.E.2d 638. Thus, I would hold that First Baptist qualifies as an institution under R.C. 5709.12(B).

### B. First Baptist Uses the Print Shop

{¶ 27} The majority holds that First Baptist fails to qualify for an exemption under R.C. 5709.12 because Bearing Precious Seed ("BPS"), not First Baptist, uses the print shop. I respectfully disagree because I believe that the majority's conclusion exalts form over substance.

{¶ 28} The BTA determined that there was a lease between First Baptist and BPS. However, there was no written agreement, and First Baptist received no money from BPS. While BPS is a nonprofit corporation, the record indicates that First Baptist and BPS are run by the same trustees. The pastor for First Baptist also testified, "Bearing Precious Seed is *our* ministry to print scriptures to give to all of the world." (Emphasis added.) Under these facts for purposes of this exemption, I would find that BPS is merely an alter ego of First Baptist. Accordingly, I would find that First Baptist used the print shop to publish Bibles free of charge.

### C. Publishing Bibles Is a Charitable Purpose

{¶ 29} In *Planned Parenthood Assn. of Columbus, Ohio, Inc. v. Tax Commr.* (1966), 5 Ohio St.2d 117, 34 O.O.2d 251, 214 N.E.2d 222, paragraph one of the syllabus, we stated:

{¶ 30} "In the absence of a legislative definition, 'charity,' in the legal sense, is the attempt in good faith, spiritually, physically, intellectually, socially and economically to advance and benefit mankind in general, or those in need of advancement and benefit in particular, without regard to their ability to supply that need from other sources, and without hope or expectation, if not with

positive abnegation, of gain or profit by the donor or by the instrumentality of the charity."

{¶ 31} In *True Christianity Evangelism,* the BTA found that the property in question was used by the taxpayer in the preparation and deliverance of his evangelical message. 91 Ohio St.3d at 119, 742 N.E.2d 638. Relying primarily upon our definition of charity in *Planned Parenthood,* the court in *True Christianity Evangelism* stated that "information disseminated by [the taxpayer] attempts to encourage people to read the Bible and to live up to its moral standards. These efforts are a good-faith attempt to disseminate information to spiritually advance and benefit mankind in general. Under the definition of charity followed by this court, [the taxpayer's] activities constitute charitable purposes." Id. at 119–120, 742 N.E.2d 638.

{¶ 32} In the instant case, printing Bibles is a vehicle for delivering an evangelical message. Pursuant to the aforementioned authority, I would hold that printing Bibles is a charitable purpose.

### D. Primary Use Equals Exclusive Use

{¶ 33} Because the majority decided this case on the threshold issue that First Baptist did not use the property in question, it does not address the exclusive-use issue. However, the Tax Commissioner argued that the print shop was not used exclusively for a charitable purpose because other religious materials were produced and sold. On this issue, I would agree with the position taken in *True Christianity Evangelism,* in which the court stated:

{¶ 34} "The General Assembly has used the phrase 'used exclusively' as a limitation in both R.C. 5709.07 (houses used exclusively for public worship) and R.C. 5709.12 (property used exclusively for charitable purposes). In *Moraine Hts. Baptist Church v. Kinney* (1984), 12 Ohio St.3d 134, 135, 12 OBR 174, 175, 465 N.E.2d 1281, 1282, this court held that for purposes of R.C. 5709.07, the phrase 'used exclusively for public worship' was equivalent to 'primary use.' There is no indication that the phrase 'used exclusively' as used in R.C. 5709.12 is to be interpreted differently than it is in R.C. 5709.07. Thus, when the BTA found that the primary use of the appellant's property was for an evangelic purpose it was equivalent to the 'exclusive use' being for evangelical purposes, which we have found to be charitable purposes." *True Christianity Evangelism,* 91 Ohio St.3d at 120–121, 742 N.E.2d 638.

{¶ 35} Similar to *True Christianity Evangelism,* I believe that the tax code should not be construed so strictly as to deny an exemption for an incidental nonexempt use of the property in question. The print shop herein is used to print some religious materials for a fee. However, there is no evidence that BPS/First Baptist made a profit on this printing. Furthermore, I would hold

that the *primary* mission of the print shop was to print Bibles to be distributed around the world free of charge. Testimony revealed that over a three-year average, religious materials other than Bibles constituted at most 4.5 percent of the total materials printed by BPS. Thus, at worst, over that three-year period, Bibles constituted 95.5 percent of BPS's printing. Therefore, I would hold that the print shop was used exclusively for a charitable purpose—printing Bibles.

## II. Conclusion

{¶ 36} Pursuant to the foregoing, I believe that the print-shop property is exempt from taxation under R.C. 5709.12(B). Therefore, I respectfully concur in part and dissent in part.

PFEIFER and O'DONNELL, JJ., concur in the foregoing opinion.

―――――――

Flach Douglas and Nicole Tipton Coil, for appellant.

Jim Petro, Attorney General, Robert C. Maier, Senior Deputy Attorney General, and Janyce C. Katz, Assistant Attorney General, for appellee.

