**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *ShadoArt Prods., Inc. v. Testa,* **Slip Opinion No. 2016-Ohio-511.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-511

SHADOART PRODUCTIONS, INC., ET AL., APPELLANTS, *v*. TESTA, TAX COMMR., ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *ShadoArt Prods., Inc. v. Testa,* Slip Opinion No. 2016-Ohio-511.]**

*Taxation—R.C. 5715.27—R.C. 5709.12 and 5709.121—Real-property-tax exemption—Thirty-year lessee can file an application to exempt leased property—Property is not exempt when applicant has no charitable purpose and property does not belong to a charitable institution.*

(No. 2014-1823—Submitted October 13, 2015—Decided February 16, 2016.)

APPEAL from the Board of Tax Appeals, No. 2012-2591.

_____

**Per Curiam**.

**{¶ 1}** This real-property-tax exemption case turns on the relationship between R.C. 5715.27, which authorizes the filing of exemption applications and specifies who has standing to file one, and R.C. 5709.12 and 5709.121, which articulate the

substantive requirements for public-use and charitable-use exemptions. In 2008, the General Assembly amended R.C. 5715.27 to expand the class of entities that may submit applications for various real-property-tax exemptions. 2008 Sub.H.B. 160.

{¶ 2} At issue here is 30,000 square feet of commercial space in Columbus. The property is owned by a for-profit corporation, appellant 503 South Front Street L.P., and is being leased for a term of 30 years to appellant ShadoArt Productions, Inc. ("ShadoArt"), a nonprofit organization under 26 U.S.C. 501(c)(3) ("501(c)(3)"). In 2011, ShadoArt filed an application for exemption under R.C. 5709.12 and 5709.121. The commissioner denied the request, and the Board of Tax Appeals ("BTA") affirmed.

{¶ 3} ShadoArt appeals, arguing that because R.C. 5715.27 authorizes it to *file* an application for exemption, it is also entitled to *receive* an exemption under R.C. 5709.12 and 5709.121. For the reasons explained below, we reject ShadoArt's argument and affirm the BTA's decision.

## FACTS

### *The property, its ownership, and its use*

{¶ 4} The Worly Building is a 51,362-square-foot structure located in the Brewery District of Columbus. The building is owned by 503 South Front Street, a corporation that leases the space to several tenants for profit.

{¶ 5} In November 2010, 503 South Front Street entered an agreement to lease 29,741 square feet—58 percent—of the Worly Building to ShadoArt, d.b.a. Shadowbox, for a 30-year term, with a purchase option. ShadoArt is contractually obligated to pay all real property taxes associated with its space.

{¶ 6} ShadoArt modified the space to include a theater, a kitchen, a bistro area where live performances occur and people queue for main-stage shows, and office space.

*Application for exemption*

{¶ 7} On April 1, 2011, ShadoArt filed an application requesting a charitable-use exemption from Ohio's real-property tax for tax year 2011. *See* R.C. 5709.12 and 5709.121. ShadoArt listed 503 South Front Street as a co-applicant.

{¶ 8} On June 15, 2012, the tax commissioner issued a final determination denying the exemption because the property was owned by a for-profit entity.

*BTA proceedings*

{¶ 9} ShadoArt appealed to the BTA, which held a hearing on March 17, 2014.

{¶ 10} The commissioner and ShadoArt entered five stipulations:

- 503 South Front Street is a for-profit limited partnership organized under the laws of Ohio.

- 503 South Front Street owns the property at issue in this case.

- The property at issue is a commercial building leased for profit to various tenants. ShadoArt is the largest tenant, with space customized for its operations and productions. ShadoArt is a nonprofit 501(c)(3) organization.

- 503 South Front Street is the owner and landlord of the property and receives rental income from the property from tenants including ShadoArt. 503 South Front Street has no charitable purpose.

- The exhibits introduced by ShadoArt are true and accurate copies of authentic documents.

{¶ 11} ShadoArt presented three witnesses, who were cross-examined by the tax commissioner. The tax commissioner did not present any witnesses.

{¶ 12} First, William Conner, the president and chief executive officer of the Columbus Association for the Performing Arts ("CAPA"), testified that CAPA

is a nonprofit organization that owns or operates nine central Ohio theaters. However, Shadowbox operates independently of CAPA. Both organizations are members of the Columbus Cultural Leadership Consortium, a group of nonprofit organizations in Central Ohio. According to Conner, CAPA's building, which houses the Ohio Theatre, is exempt from property taxation.

{¶ 13} Next, Stev Guyer, a co-founder and the executive director of ShadoArt, testified about the company's mission. Shadowbox strives to provide original artistic programming for a broad audience and features sketch comedy, musical performances, theater, dance, and mixed-genre shows. To this end, Shadowbox regularly collaborates with other local arts organizations, such as the Columbus Museum of Art, Opera Columbus, and BalletMet Columbus.

{¶ 14} Guyer described Shadowbox's significant growth since its creation in 1988. According to Guyer, Shadowbox's downtown location has allowed the company to more effectively interact with the community and to present a greater variety of productions.

{¶ 15} ShadoArt has been recognized as a nonprofit 501(c)(3) organization since 1991. Guyer explained that it operates on an earned-income basis, rather than relying primarily on grants for funding. He estimated that 60 percent of Shadowbox's income is generated from ticket sales, 38 percent from food and beverage sales, and 2 percent from donations. Free tickets are available for most of Shadowbox's performances.

{¶ 16} ShadoArt also presented testimony from Stacie Boord, Shadowbox's director of community relations and director of education. Boord described Shadowbox's relationship with the community, including its charitable contributions and sponsorship of charitable events. She also testified about the company's extensive educational programming, including partnerships with local schools to provide arts education.

**{¶ 17}** Finally, ShadoArt introduced 96 exhibits. These documents include detailed information about the company's operations, shows, collaborations, educational efforts, and charitable endeavors. They also include financial information about ShadoArt, proof of its 501(c)(3) status, and copies of its federal tax returns for 2010, 2011, and 2012.

**{¶ 18}** On September 25, 2014, the BTA affirmed the commissioner's denial of exemption. BTA No. 2012-2591, 2014 WL 5148348 (Sept. 25, 2014). In its decision, the BTA explained that ShadoArt did have standing to file an application for exemption under R.C. 5715.27. *Id.* at *2, citing *Columbus City School Dist. Bd. of Edn. v. Wilkins*, 106 Ohio St.3d 200, 2005-Ohio-4556, 833 N.E.2d 726. However, "the applicable exemption statutes, in this case R.C. 5709.12 and R.C. 5709.121, still control a determination of whether the property itself is entitled to exemption." *Id.* Accordingly, the BTA held that regardless of ShadoArt's use of the property, an exemption was not appropriate here: the property "belonged to" 503 South Front Street, *see* R.C. 5709.121, and 503 South Front Street's use—renting the space—was purely for profit, *see* R.C. 5709.12. *Id.* at *3.

## ANALYSIS

**{¶ 19}** On appeal, ShadoArt asserts two propositions of law:

> Proposition of Law No. 1: The Ohio Revised Code, § 5715.27, confers standing on ShadoArt, as a long-term lessee, to seek a real-property tax exemption.

> Proposition of Law No. 2: The real property leased by ShadoArt is property exempt from taxation under R.C. 5709.12.

> The subject property is exempt because it "belongs to" ShadoArt, ShadoArt makes "exclusive charitable use" of the property under R.C. 5709.121, and ShadoArt is a charitable or educational institution.

### *Burdens and standard of review*

**{¶ 20}** This court reviews a BTA decision only to determine whether it is "reasonable and lawful." R.C. 5717.04; *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14. We defer to the BTA's factual findings, including determinations of a property's value, *Cuyahoga Cty. Bd. of Revision v. Fodor*, 15 Ohio St.2d 52, 239 N.E.2d 25 (1968), syllabus, as long as they are supported by reliable and probative evidence in the record, *Satullo* at ¶ 14. By contrast, we review the BTA's legal determinations de novo. *Crown Communication, Inc. v. Testa*, 136 Ohio St.3d 209, 2013-Ohio-3126, 992 N.E.2d 1135, ¶ 16.

**{¶ 21}** In reviewing a BTA decision to grant or deny an exemption, we must be mindful that tax-exemption statutes are strictly construed under Ohio law. *See Cincinnati Community Kollel v. Testa*, 135 Ohio St.3d 219, 2013-Ohio-396, 985 N.E.2d 1236, ¶ 17. Thus, ShadoArt bore "the burden of proof * * * to show that the property is entitled to exemption." R.C. 5715.271; *see also Anderson/Maltbie Partnership v. Levin*, 127 Ohio St.3d 178, 2010-Ohio-4904, 937 N.E.2d 547, ¶ 16, quoting *Ares, Inc. v. Limbach*, 51 Ohio St.3d 102, 104, 554 N.E.2d 1310 (1990) ("the onus is on the taxpayer to show that the language of the statute 'clearly express[es] the exemption' in relation to the facts of the claim").

### *The scope of R.C. 5715.27*

*R.C. 5715.27 sets forth general exemption-application procedures, and since 2008, it has permitted certain long-term lessees to file applications for exemption*

**{¶ 22}** R.C. 5715.27 "is a general statute applicable to applications for exemption." *Pump House Ministries v. Levin*, 5th Dist. Ashland No. 13-COA-036, 2014-Ohio-1590, ¶ 13. It "sets forth the requirements for filing an application for exemption," *id.*, such as who may file an application and when and who may contest

6

an exemption and how. *See Strongsville Bd. of Edn. v. Zaino*, 92 Ohio St.3d 488, 489, 751 N.E.2d 996 (2001) (describing the mechanics of former R.C. 5715.27(A) through (D)).

{¶ 23} Prior to 2008, R.C. 5715.27 did not specify that a lessee could file an exemption application. Beginning in 1982, R.C. 5715.27 limited the class of those who could file applications to the owners of property. *See* Am.Sub.S.B. No. 262, 139 Ohio Laws, Pt. I, 711, 713. In 2004, we held that "owner," as used in R.C. Chapter 5715, "refers only to a *legal title holder* of the real property for which a tax exemption is sought." (Emphasis added.) *Performing Arts School of Metro. Toledo, Inc. v. Wilkins*, 104 Ohio St.3d 284, 2004-Ohio-6389, 819 N.E.2d 649, ¶ 13. In *Performing Arts School*, a community school appealed the commissioner's denial of its application for exemption under R.C. 5709.07, the public-schoolhouse exemption. *Id.* at ¶ 5, *reversing* B.T.A. No. 2001-J-977, 2002 Ohio Tax Lexis 2627 (Dec. 20, 2002). This court held that because the school was "a lessee rather than * * * a titleholder of the subject property," it could not file an application under R.C. 5715.27. *Id.* at ¶ 6, 15.

{¶ 24} In the wake of the *Performing Arts School* decision, the General Assembly amended R.C. 5715.27(A) to allow certain nontitleholders to apply for an exemption of property. *See Pump House* at ¶ 16.

{¶ 25} As amended, R.C. 5715.27(A) states:

> (1) Except as provided in division (A)(2) of this section and in section 3735.67 of the Revised Code, the owner, a vendee in possession under a purchase agreement or a land contract, the beneficiary of a trust, or a lessee for an initial term of not less than thirty years of any property may file an application with the tax commissioner, on forms prescribed by the commissioner, requesting that such property be exempted from taxation and that taxes,

interest, and penalties be remitted as provided in division (C) of section 5713.08 of the Revised Code.

**{¶ 26}** Thus, a 30-year lessee—such as ShadoArt—can file an application to exempt leased property under R.C. 5715.27(A)(1).

*The 2008 amendment of R.C. 5715.27 did not alter the substantive requirements for any specific exemption under R.C. Chapter 5709*

**{¶ 27}** ShadoArt contends that when the General Assembly amended R.C. 5715.27 to expand the class of entities who can file an exemption application, it simultaneously expanded the exemptions available under R.C. 5709.12 and 5709.121. ShadoArt reasons that if it has standing to file an application under R.C. 5715.27, then it also must have some underlying legal right to exemption; otherwise, the 2008 amendment would be meaningless.

**{¶ 28}** Contrary to ShadoArt's claims, the amendment to R.C. 5715.27 did not alter the scope of the charitable-use exemption set forth in R.C. 5709.12 and 5709.121. As explained above, the requirements in R.C. 5715.27 apply to applicants seeking a variety of real-property-tax exemptions. But the General Assembly's 2008 amendment of that provision did not alter the underlying substantive requirements for obtaining any of those exemptions, including the charitable-use exemption.

**{¶ 29}** The General Assembly's decision to allow long-term lessees to file exemption applications is reasonable because numerous statutes permit exemptions for property that has been leased. For example,

- R.C. 5709.08 exempts certain property put to public use, even when "leased or otherwise operated by a private party";
- R.C. 5709.081 exempts certain public recreational facilities used for athletic fields, even if they are leased; and

- R.C. 5709.084 exempts certain convention centers and arenas "regardless of whether the property is leased to * * * a person other than the city."

{¶ 30} The charitable-use exemption itself may apply even when the property is subject to a long-term lease. As explained below, under R.C. 5709.121, property may be exempt for charitable purposes even if the owner is leasing the property, provided that both the lessor and the lessee are charitable institutions. *See* R.C. 5709.121(A)(1)(b). Thus, in some situations, there is good reason to allow a lessee to file an application for exemption under R.C. 5709.12 and 5709.121.

{¶ 31} In short, contrary to ShadoArt's claims, the General Assembly did not expressly or implicitly modify the charitable-use exemption when it authorized additional filers under R.C. 5715.27(A)(1). In light of this conclusion, ShadoArt's claim for exemption turns on whether it satisfies the well-established requirements set forth in R.C. 5709.12 and 5709.121.

### *Application of the charitable-use exemption*

{¶ 32} In its second proposition of law, ShadoArt argues that the subject property is exempt under R.C. 5709.12 because it belongs to ShadoArt, ShadoArt is a charitable or educational institution, and ShadoArt makes exclusive charitable use of the property under R.C. 5709.121. We will consider separately the application of R.C. 5709.12 and 5709.121.

*Exemption is not warranted under R.C. 5709.12(B) because the property*

*belongs to 503 South Front Street, which uses it for profit*

{¶ 33} R.C. 5709.12(B) states that "[r]eal and tangible personal property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation."

{¶ 34} ShadoArt's exemption claim turns on whether the leased space belongs to it. We have long held that "belonging to," as used in R.C. 5709.12, means "owned by." In 1876, the court explained that "[t]he word 'belonging' is

used in the same sense throughout" the clause defining the charitable-use exemption, "and, as there used, means ownership." *Humphries v. Little Sisters of the Poor*, 29 Ohio St. 201, 207 (1876). Possessing a leasehold interest, even under a long-term lease, is not ownership. *See, e.g., Toledo v. Jenkins*, 143 Ohio St. 141, 158-159, 54 N.E.2d 656 (1944); *Evans Invest. Co. v. Limbach*, 51 Ohio App.3d 104, 106, 554 N.E.2d 941 (10th Dist.1988).

{¶ 35} Nevertheless, ShadoArt urges us to reconsider the meaning of "belonging to." ShadoArt reasons that the phrase "belonging to" is much broader than "owned by" and suggests that the General Assembly indicated its preference for this broader interpretation when it amended R.C. 2715.27. But, as explained above, the 2008 amendment to R.C. 2715.27 changed only who may *file* an application for exemption; it did not alter the requirements for qualifying for any exemption or this court's interpretation of those requirements.

{¶ 36} Moreover, there is good reason to reject ShadoArt's proposed definition of "belonging to." If property belongs to a long-term lessee under R.C. 5709.12, then R.C. 5709.121 would be unnecessary. R.C. 5709.121 expands the definition of "used exclusively for charitable purposes" in R.C. 5709.12 to cover situations in which ownership and use do not coincide. If an organization is charitable and leases property to another organization that uses it for charitable purposes, then the property may be exempt under R.C. 5709.121. The existence of this provision alone proves that property does not belong to a long-term lessee under R.C. 5709.12. Moreover, the principle that exemption provisions are strictly construed calls for adopting the more, rather than the less, restrictive construction of "belonging to."

{¶ 37} For these reasons, the property belongs to 503 South Front Street, not ShadoArt. 503 South Front Street's exemption claim then turns on whether its use of the property is charitable. *See Northeast Ohio Psych. Inst. v. Levin*, 121 Ohio St.3d 292, 2009-Ohio-583, 903 N.E.2d 1188, ¶ 11 ("under the general exemption

for 'exclusive charitable use' of property set forth at R.C. 5709.12(B), it is the *owner's use* of the property, not a lessee's use that determines whether the property should be exempted" [emphasis sic]).

{¶ 38} The record here clearly indicates that, as the parties stipulated, 503 South Front Street has no charitable purpose. It is a private, for-profit company that "is using th[e] property for leasing." *Northeast Ohio Psych. Inst.* at ¶ 11; *see also Highland Park Owners*, 71 Ohio St.3d at 406-407, 644 N.E.2d 284 (as a general matter, "a private profit-making venture does not use property exclusively for charitable purposes"). Thus, the property is not exempt under R.C. 5709.12(B).

*Exemption is not warranted under R.C. 5709.121 because the*

*property does not belong to a charitable institution*

{¶ 39} In light of the above holding, the property in question "must qualify [for an exemption], if at all, under R.C. 5709.121." *Northeast Ohio Psych. Inst.* at ¶ 12.

{¶ 40} R.C. 5709.121(A) states that if property "*belong[s] to a charitable or educational institution*," then it "shall be considered as used exclusively for charitable or public purposes by such institution" *if* it meets one of several requirements. (Emphasis added.)

{¶ 41} R.C. 5709.121 "does not itself grant any exemption." *First Baptist Church of Milford, Inc. v. Wilkins*, 110 Ohio St.3d 496, 2006-Ohio-4966, 854 N.E.2d 494, ¶ 16. Instead, it "refines" R.C. 5709.12 by broadening the meaning of the phrase "used exclusively for charitable purposes" in that provision. *Id.*; *see also Dialysis Clinic, Inc. v. Levin*, 127 Ohio St.3d 215, 2010-Ohio-5071, 938 N.E.2d 329, ¶ 24. Historically, the charitable-use exemption was not available when a property owner "had leased the property to another, even if that lessee was using the property for charitable purposes." *Dialysis Clinic* at ¶ 23. But the General Assembly enacted R.C. 5709.121 to address that precise situation: It "expand[ed] the charitable-use exemption to encompass (among other situations) the situation

11

in which an entity that qualifies as a 'charitable institution' itself leases property to another charitable institution for charitable purposes." *Northeast Ohio Psych. Inst.*, 121 Ohio St.3d 292, 2009-Ohio-583, 903 N.E.2d 1188, at ¶ 12; *see also Dialysis Clinic* at ¶ 22 (when the property owner is a "charitable or educational" institution, R.C. 5709.121 "link[s] certain property uses" to R.C. 5709.12(B)'s exclusive-charitable use exemption").

**{¶ 42}** R.C. 5709.121 "applies *only* to property 'belonging to' *i.e.*, *owned by*, a charitable or educational institution, or the state or a political subdivision." (Emphasis sic.) *Highland Park Owners*, 71 Ohio St.3d at 406, 644 N.E.2d 284; *see also First Baptist Church*, 110 Ohio St.3d 496, 2006-Ohio-4966, 854 N.E.2d 494, at ¶ 15, quoting *White Cross Hosp. Assn. v. Bd. of Tax Appeals*, 38 Ohio St.2d 199, 203, 311 N.E.2d 862 (1974) (Stern, J., concurring) (the provision " 'has no application to noncharitable institutions seeking tax exemption under R.C. 5709.12' "). Thus, "an entity that leases property to another must establish its charitable status based on the range of *its own activities* and may not rely upon the activities of a particular lessee." (Emphasis sic.) *Northeast Ohio Psych. Inst.* at ¶ 14.

**{¶ 43}** As discussed above, 503 South Front Street owns the subject property and leases it to ShadoArt for profit. Because 503 South Front Street does not purport to have any charitable purpose, the property cannot qualify for exemption under R.C. 5709.121.

CONCLUSION

**{¶ 44}** For these reasons, we affirm the BTA's decision.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Laura MacGregor Comek; and Crabbe, Brown & James, L.L.P., Larry H. James, and Andrew G. Douglas, for appellants.

Michael DeWine, Attorney General, and Daniel W. Fausey and Raina M. Nahra, Assistant Attorneys General, for appellee Joseph W. Testa.

Rich & Gillis Law Group, L.L.C., Mark H. Gillis, Kelley A. Gorry, and Karol Fox, for appellee Columbus City Schools.

_____