[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Geneva Area Recreational, Educational & Athletic Trust v. Testa,* Slip Opinion No. 2016-Ohio-2695.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-2695

GENEVA AREA RECREATIONAL, EDUCATIONAL & ATHLETIC TRUST,

APPELLANT, *v*. TESTA, TAX COMMR., APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Geneva Area Recreational, Educational & Athletic Trust v. Testa,* Slip Opinion No. 2016-Ohio-2695.]**

*Taxation—Real property—Charitable-use exemption—R.C. 5709.12(B) and 5709.121—Property owned by for-profit entity and used for leasing is not exempt—Prospective-use doctrine does not apply.*

(No. 2014-1778—Submitted February 9, 2016—Decided April 27, 2016.)

APPEAL from the Board of Tax Appeals, No. 2012-841.

_____

PFEIFER, J.

{¶ 1} In 2009, appellant, the Geneva Area Recreational, Educational and Athletic Trust, a nonprofit 501(c)(3) corporation d.b.a. Spire Institute ("Spire"), entered into an agreement to lease more than 160 acres of land in Geneva, Ohio, from Roni Lee, L.L.C. ("Roni Lee"), a for-profit company.  By 2012, Spire had

constructed Olympic-grade athletic facilities and related improvements on about one fourth of the property. In tax year 2010, Spire sought a real-estate-tax exemption for the entire property under the charitable-use exemption, citing R.C. 5709.12 and 5709.121. The commissioner denied the request, and the Board of Tax Appeals ("BTA") affirmed.

{¶ 2} Spire appealed, arguing that the exemption applies because the property belongs to it (not Roni Lee) and because Spire uses the property exclusively for charitable purposes. We reject Spire's arguments and affirm the BTA's decision.

**FACTS**

***The property and its ownership***

{¶ 3} Roni Lee owns the subject property, a 163.09-acre tract in Geneva. On March 31, 2009, Roni Lee leased the property to Spire for a renewable term of 99 years. Under the lease, Spire agreed to pay Roni Lee $1 annually and assumed responsibility for all maintenance and improvements. The record reveals a close connection between Roni Lee and Spire. Spire's chief executive officer, Ron Clutter, is the primary owner and managing member of Roni Lee. Clutter owns a 95 percent interest in Roni Lee; his wife owns the remaining interest.

{¶ 4} Consistent with the lease terms, Spire has constructed Olympic-grade athletic facilities and ancillary improvements, collectively known as the Spire Complex, on the property. The facilities include the following:

- The Fields and Courts Building, which houses a full-size synthetic turf field and a large multipurpose court area. All-Star Physical Therapy and Wellness, a for-profit company, pays $4,473 monthly to lease 4,000 square feet in the building and provides Spire with trainers.

- The Aquatics Center, which includes two pools (recreational and Olympic-sized), diving areas, a restaurant, and the Michael Johnson

2

Performance Training Center (a training and fitness center). Spire pays the center $150,000 annually to operate on the premises.

- The Indoor Track and Field Building, which accommodates football, baseball, track-and-field events, and a 25,000-square-foot banquet area. It also houses Spire Fit, a fitness center that offers public memberships.

- A nine-acre outdoor stadium, which accommodates football, soccer, and track-and-field events. The stadium seats 10,000 and includes ten enclosed luxury suites.

{¶ 5} Spire has developed only about 45 acres of the property so far, but it has plans for future development. It has contemplated, among other things, a tennis complex, broadcast facilities, a spa and wellness center, a hotel and conference center, freestanding restaurants, commercial development, a retail village, and a residential sports academy. In the meantime, Spire partners with a private school near Mentor to operate "Spire Academy," a residential program that allows students to train at Spire while they live and study at Andrews Osborne Academy.

*Application for exemption*

{¶ 6} In tax year 2009, the county auditor valued the subject property at $2,660,220. Spire filed an application requesting exemption for tax year 2010 under R.C. 5709.12(B) and 5709.121.

{¶ 7} Before the tax commissioner, Spire presented evidence that the Spire Complex serves unmet community needs. For example, the local high school uses Spire's fields for a cost comparable to what it would pay to maintain its own fields. Spire has also agreed to let the school retain the amount of gate revenues from football games that it would have earned at its own facilities; Spire takes the remainder.

{¶ 8} Spire also asserted that its services are available regardless of ability to pay. In its exemption application, Spire explained that it would set fees at an

3

affordable rate for local residents and noted that fees "may be waived in special circumstances, especially for underprivileged youth."

{¶ 9} As to the undeveloped property, Spire's application stated, "In the future, it is possible that any excess real estate in the Complex may be sold to businesses for commercial development."

{¶ 10} On January 23, 2012, the tax commissioner denied exemption. The commissioner found that Roni Lee uses the property for "land development and commercial leasing." The commissioner found "no evidence that [Spire] is engaged in charitable activity in any substantial way, even though it is a non-profit entity." Ultimately, the commissioner concluded,

> the owner's primary use of the subject property is leasing it for development as an elite sports training facility to develop Olympic and professional caliber athletes, together with the appreciation and development of the surrounding property controlled by the owner and not subject to the lease.

{¶ 11} The commissioner also denied exemption of the undeveloped property under the prospective-use doctrine—which can exempt real property acquired with the intention of devoting it to a use that would exempt it from taxation but that has not yet begun—explaining that Spire's own exemption application stated that this land may be sold to developers for commercial use.

### *BTA proceedings*

{¶ 12} Spire appealed to the BTA, arguing that it is a charitable institution and that it uses the subject property exclusively for charitable purposes. In addition, Spire argued that the property "belongs to" it—rather than to Roni Lee—for purposes of R.C. 5709.12(B) and 5709.121.

**{¶ 13}** The BTA held a hearing on July 29, 2013. Spire presented extensive testimony from Jeffrey Orloff, Spire's chief operating officer, about Spire's operations and charitable activities. Orloff testified that Ron Clutter created Spire to give the local community access to athletic facilities that did not otherwise exist in the region. Spire's mission is to "unlock the full potential of the human spirit through athletics, academics, and service." According to Orloff, the goal of Spire is "not to make money but to provide * * * services." He testified that Spire provides many services for free or at a reduced rate. Orloff emphasized that the policy is well known to both employees and patrons.

**{¶ 14}** In support of this testimony, Spire introduced a copy of a board resolution indicating that it "will offer its services at its own expense, or on a sliding scale of cost, based on any individual's or organization's ability to pay" and will "make a special effort to offer [its] services, programs and facilities" to individuals in need of that assistance. Orloff explained that this was Spire's intent "from day one," although he was uncertain when the board adopted this policy or when similar language appeared on Spire's website. Orloff conceded that Spire does not have a published sliding fee scale or any written policy for reduced rates, even for tuition at Spire Academy. Instead, Spire awards discounts on a case-by-case basis, relying on the "honor system."

**{¶ 15}** As to the undeveloped portions of the property, Orloff testified that Spire has yet to make final plans or secure funds for future projects. He indicated that Spire intends to build dormitories and possibly other sporting complexes. Orloff asserted that any future uses of the property would be consistent with Spire's mission, but on cross-examination he conceded that "it is possible any excess real estate in the Complex may be sold to businesses for commercial development." In fact, one projection for Spire in "2011 and beyond" specifically mentions a "Commercial Development/Retail Village." Ultimately, Orloff stated that Spire hopes to keep a high percentage of the property, perhaps 80 percent.

**{¶ 16}** At the hearing, counsel for the tax commissioner inquired about Spire's 2010 tax returns. Although the returns reported $15,243,518 in net income, Orloff insisted that Spire "[broke]-even at best." He explained that the tax figures did not account for capital expenditures and noted that Ron Clutter donated $19 million to Spire in 2010.

**{¶ 17}** On September 16, 2014, the BTA issued a decision affirming the denial of exemption. The BTA found that Roni Lee did not use the property for charitable purposes; the only activity there was evidence that the company undertook was leasing the property to Spire. The BTA also found that Spire does not use the property solely for charitable purposes. It described Spire's "main goal" as "creat[ing] an elite athletic training facility" for professional and Olympic-caliber athletes. The BTA concluded that most Spire patrons pay for services; it saw no concrete evidence that Spire offers many services for a reduced rate, and it was unconvinced that Spire has a formal policy to provide services without regard to ability to pay. Finally, the BTA held that Spire failed to satisfy its burden with respect to the unused portions of the property under the prospective-use doctrine.

## ANALYSIS

**{¶ 18}** On appeal, Spire asserts six propositions of law:

PROPOSITION OF LAW NO. 1: Real property a charitable institution leases pursuant to a 99-year renewable ground lease agreement "belongs to" that charitable institution for purposes of applying R.C. 5709.12 and R.C. 5709.121.

PROPOSITION OF LAW NO. 2: An institution operated without any view to profit and exclusively for charitable purposes is a charitable institution.

PROPOSITION OF LAW NO. 3: Real property that is used exclusively for charitable purposes is exempt from taxation under R.C. 5709.12(B).

PROPOSITION OF LAW NO. 4: A charitable institution's real property is exempt from taxation under R.C. 5709.121(A)(2) if it is made available under the direction or control of the charitable institution for use in furtherance of or incidental to the charitable institution's charitable, educational or public purposes and not with a view to profit.

PROPOSITION OF LAW NO. 5: R.C. 5709.12 and R.C. 5709.121 do not preclude the collection of fees for services nor do they require a certain percentage of free or discounted services.

PROPOSITION OF LAW NO. 6: Engaging in extensive planning to develop real property for activities consistent with a charitable institution's charitable purposes satisfies this court's "prospective use" standard.

### *Standard of review*

{¶ 19} We review the decisions of the BTA to determine whether they are reasonable and lawful. R.C. 5717.04. We will defer to the BTA's factual findings as long as they are supported by reliable and probative evidence in the record. *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14. By contrast, the BTA's legal determinations are subject to de novo review. *Crown Communication, Inc. v. Testa*, 136 Ohio St.3d 209, 2013-Ohio-3126, 992 N.E.2d 1135, ¶ 16.

{¶ 20} Tax exemption statutes are strictly construed under Ohio law. *See Cincinnati Community Kollel v. Testa*, 135 Ohio St.3d 219, 2013-Ohio-396, 985 N.E.2d 1236, ¶ 17. Accordingly, Spire bore "the burden of proof * * * to show that

the property is entitled to exemption." R.C. 5715.271; *see also Anderson/Maltbie Partnership v. Levin*, 127 Ohio St.3d 178, 2010-Ohio-4904, 937 N.E.2d 547, ¶ 16 ("the onus is on the taxpayer to show that the language of the statute 'clearly express[es] the exemption' in relation to the facts of the claim" [brackets sic]), quoting *Ares, Inc. v. Limbach*, 51 Ohio St.3d 102, 104, 554 N.E.2d 1310 (1990).

### *The charitable-use exemption:  R.C. 5709.12(B) and 5709.121*

{¶ 21} The outcome of Spire's appeal turns on the application of two statutory provisions—R.C. 5709.12(B) and 5709.121—that set forth aspects of Ohio's charitable-use exemption.

{¶ 22} R.C. 5709.12(B) states that "[r]eal * * * property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation * * *."  For purposes of this section, "institutions" includes both charitable and noncharitable organizations.  *First Baptist Church of Milford, Inc. v. Wilkins*, 110 Ohio St.3d 496, 2006-Ohio-4966, 854 N.E.2d 494, ¶ 15.  If a property belongs to a charitable institution, however, it is also necessary to look to R.C. 5709.121. This provision "does not itself grant any exemption."  *Id.* at ¶ 16.  Instead, it "constitutes a refinement of R.C. 5709.12(B)" that broadens the meaning of "used exclusively for charitable purposes" for property that belongs to a charitable institution.  *See Dialysis Clinic, Inc. v. Levin*, 127 Ohio St.3d 215, 2010-Ohio-5071, 938 N.E.2d 329, ¶ 22, 24.

{¶ 23} R.C. 5709.121(A) states:

Real property and tangible personal property belonging to a charitable or educational institution * * * shall be considered as used exclusively for charitable or public purposes by such institution * * * if it meets one of the following requirements:

(1) It is used by such institution * * * under a lease, sublease, or other contractual arrangement:

(a) As a community or area center in which presentations in music, dramatics, the arts, and related fields are made in order to foster public interest and education therein;

(b) For other charitable, educational, or public purposes.

(2) It is made available under the direction or control of such institution * * * for use in furtherance of or incidental to its charitable, educational, or public purposes and not with the view to profit.

**{¶ 24}** R.C. 5709.121 was enacted to address situations where ownership and use of property do not coincide. Traditionally, the existence of a lease defeated exemption under R.C. 5709.12; that is, exemption was not available if the property "owner had leased the property to another, even if that lessee was using the property for charitable purposes." *Dialysis Clinic* at ¶ 23. When the General Assembly enacted R.C. 5709.121 in 1969, Am.Sub.H.B. No. 817, 133 Ohio Laws, Part III, 2646, it "expanded the charitable-use exemption to encompass * * * the situation in which an entity that qualifies as a 'charitable institution' itself leases property to another charitable institution for charitable purposes," *Northeast Ohio Psych. Inst. v. Levin*, 121 Ohio St.3d 292, 2009-Ohio-583, 903 N.E.2d 1188, ¶ 12.

**{¶ 25}** R.C. 5709.121 does not apply when exemption is sought for property that belongs to a noncharitable institution. *See First Baptist Church*, 110 Ohio St.3d 496, 2006-Ohio-4966, 854 N.E.2d 494, at ¶ 13-15, citing *White Cross Hosp. Assn. v. Bd. of Tax Appeals*, 38 Ohio St.2d 199, 203, 311 N.E.2d 862 (1974) (Stern, J., concurring). It "applies *only* to property 'belonging to' *i.e.*, *owned by*, a charitable or educational institution, or the state or a political subdivision." (Emphasis sic.) *Highland Park Owners, Inc. v. Tracy*, 71 Ohio St.3d 405, 406, 644 N.E.2d 284 (1994); *see also Dialysis Clinic*, 127 Ohio St.3d 215, 2010-Ohio-5071, 938 N.E.2d 329, at ¶ 22 (when the owner is a charitable or educational institution,

R.C. 5709.121 "links certain property uses to R.C. 5709.12(B)'s exclusive-charitable-use exemption"). Thus, to trigger this definition of exclusive charitable use, "an entity that leases property to another must establish its charitable status based on the range of *its own activities* and may not rely upon the activities of a particular lessee." (Emphasis sic.) *Northeast Ohio Psych. Inst.* at ¶ 14.

### The BTA reasonably and lawfully determined that the property belongs to Roni Lee, not Spire

{¶ 26} To analyze Spire's exemption request, the BTA first had to determine which entity the subject property belongs to for purposes of R.C. 5709.12(B) and 5709.121. Spire argues that the BTA erred by holding that the property belongs to Roni Lee, the titleholder, rather than to Spire, which has a long-term leasehold interest in the property. As a starting point, we have equated "belonging to" with "owned by" in the charitable-exemption context. *See Humphries v. Little Sisters of the Poor*, 29 Ohio St. 201, 207 (1876) (explaining that as used throughout an earlier version of the charitable-use exemption, "[t]he word 'belonging' * * * means ownership"); *Episcopal Parish of Christ Church v. Kinney*, 58 Ohio St.2d 199, 201, 389 N.E.2d 847 (1979) (" 'The legislative definition of exclusive charitable use found in R.C. 5709.121, however, applies only to property 'belonging to,' *i.e., owned by*, a charitable or educational institution' " [emphasis sic]), quoting *White Cross*, 38 Ohio St.2d at 203, 311 N.E.2d 862 (Stern, J., concurring). And recently we stated in the context of analyzing a 30-year lease with a purchase option that "[p]ossessing a leasehold interest, even under a long-term lease, is not ownership." *ShadoArt Prods., Inc. v. Testa*, ___ Ohio St.3d ___, 2016-Ohio-511, ___ N.E.3d ___, ¶ 5, 34. But notably, *ShadoArt* did not involve a renewable 99-year lease, which arguably presents a different question.

{¶ 27} Spire now contends that it qualifies as the entity to which the property belongs because its renewable 99-year leasehold interest amounts to

10

ownership. *See Ralston Steel Car Co. v. Ralston*, 112 Ohio St. 306, 309, 319, 147 N.E. 513 (1925) (holding that 99-year lease, renewable forever, amounted to a permanent fee-simple estate for purposes of evaluating a widow's right to dower); *Carney v. Cleveland City School Dist. Pub. Library of Cuyahoga Cty.*, 169 Ohio St. 65, 69-70, 157 N.E.2d 311 (1959) (permitting public-property exemption under R.C. 5709.08 when public library spanned two parcels, the smaller of which was held under a long-term lease). But even assuming, without deciding, that property can belong to the holder of a renewable 99-year lease for purposes of analyzing the charitable-use exemption, there remains a factual question whether the lessee qualifies as an owner in a particular case.

{¶ 28} Having reviewed the record, we cannot conclude that the BTA abused its discretion by concluding that Roni Lee's contract and relationship with Spire did not effectively transfer ownership of the property to Spire. The close relationship between the lessor and lessee—Ron Clutter is the primary owner and managing member of Roni Lee, and he is also the president, founder, and director of Spire—makes it unclear how much control the lease transferred to Spire. The lease states that both parties can modify its terms by a signed writing; over time, the president of Spire could benefit himself as principal of Roni Lee by creating new lease terms. Finally, Spire has limited control over its use of the property; for example, the lease permits Spire to improve the property only as specifically contemplated by the agreement. Under these circumstances, it is not unreasonable to conclude that the property continues to belong to Roni Lee.

{¶ 29} In short, the BTA did not err by finding that the property belongs to Roni Lee, the titleholder, for purposes of analyzing the charitable-use exemption.

### The BTA properly denied exemption under R.C. 5709.12 and 5709.121

{¶ 30} We next analyze whether the property is exempt under R.C. 5709.12 or 5709.121.

*R.C. 5709.121 does not apply because the property belongs to*
*Roni Lee, which is not a charitable institution*

**{¶ 31}** As explained above, R.C. 5709.121 applies only when property belongs to a "charitable or educational institution or to the state or a political subdivision." Accordingly, we may look to 5709.121 only if Roni Lee qualifies as a charitable or educational institution.

**{¶ 32}** Here, the BTA concluded that Roni Lee is not a charitable or educational institution. As the BTA explained, "[i]t is clear from the record that Roni Lee, LLC is not a charitable institution. The only evidence of its activities indicates that it solely leases the subject property to [Spire]." Spire does not contest this finding on appeal; to the contrary, Spire's own brief states that Roni Lee is a "for-profit limited liability company" and describes it as "a non-charitable institution."

**{¶ 33}** Because the subject property does not belong to a charitable or educational institution, we turn to R.C. 5709.12.

*The BTA properly denied exemption under R.C. 5709.12 because*
*it reasonably and lawfully concluded that Roni Lee does not use*
*the property "exclusively for charitable or public purposes"*

**{¶ 34}** The availability of exemption under R.C. 5709.12 turns on whether Roni Lee is using the property "exclusively for charitable purposes." For purposes of this analysis, Spire's use of the property is irrelevant. *See Northeast Ohio Psych. Inst.*, 121 Ohio St.3d 292, 2009-Ohio-583, 903 N.E.2d 1188, at ¶ 11 ("under the general exemption for 'exclusive charitable use' of property set forth at R.C. 5709.12(B), it is the *owner's use* of the property, not a lessee's use, that determines whether the property should be exempted" [emphasis sic]).

**{¶ 35}** We have held that "a private profit-making venture does not use property exclusively for charitable purposes." *Highland Park Owners*, 71 Ohio St.3d at 406-407, 644 N.E.2d 284, citing *Cullitan v. Cunningham Sanitarium*, 134

Ohio 99, 16 N.E.2d 205 (1938), *Cleveland Osteopathic Hosp. v. Zangerle*, 153 Ohio St. 222, 91 N.E.2d 261 (1950), and *Lincoln Mem. Hosp., Inc. v. Warren*, 13 Ohio St.2d 109, 235 N.E.2d 129 (1968). Thus, exemption under R.C. 5709.12 is not appropriate when an owner uses property "for leasing." *Northeast Ohio Psych. Inst.* at ¶ 11; *see also Community Health Professionals v. Levin*, 113 Ohio St.3d 432, 2007-Ohio-2336, 866 N.E.2d 478, ¶ 8. Indeed, the case law has long rejected a finding of exclusive charitable use under R.C. 5709.12(B) when a for-profit entity owns the property and allows a nonprofit to use it—and the BTA has adhered to that authority. *See Lincoln Mem. Hosp.* at 110; *Evans Invest. Co. v. Limbach*, 51 Ohio App.3d 104, 106, 554 N.E.2d 941 (10th Dist.1988).

{¶ 36} Here, the record supports the tax commissioner's and the BTA's findings that Roni Lee did not use the property exclusively for charitable purposes. The commissioner found that Roni Lee's "use of the property is that of land development and commercial leasing" and that Roni Lee used the property to lease it and also to contribute to "the appreciation and development of the surrounding property" owned by Roni Lee that is not subject to the lease. Roni Lee does not significantly profit from rental payments under the lease, which requires payment of only $1 per year. *See Bexley Village, Ltd. v. Limbach*, 68 Ohio App.3d 306, 310, 588 N.E.2d 246 (10th Dist.1990) ("$1 per year rental does not qualify as profit" under R.C. 5709.07). But Roni Lee stands to profit from the lease in other ways. As the tax commissioner's final determination explained, public records indicate that Roni Lee owns 445 acres of property adjacent to the subject parcels whose value is affected by Spire's improvement of the parcels it rents. In addition, Roni Lee will retain Spire's improvements to the property when Spire's interest reverts to Roni Lee.

{¶ 37} Given these facts, the BTA did not act unlawfully or unreasonably when it found that Roni Lee does not use the property exclusively for charitable

purposes. Accordingly, we affirm the BTA's denial of exemption under R.C. 5709.12.

### *The prospective-use doctrine does not apply*

{¶ 38} Finally, Spire contends that the undeveloped portions of the property qualify for exemption under the prospective-use doctrine.

{¶ 39} The prospective-use doctrine states:

> Where an entity, which under the law is entitled to have its property exempted from taxation, acquires real property with the intention of devoting it to a use exempting it from taxation, such property is entitled to be exempted from taxation, as long as it is not devoted to nonexempt or commercial use, even though actual physical use of the property for the exempt purpose has not yet begun.

*Carney*, 169 Ohio St. 65, 157 N.E.2d 311, at paragraph one of the syllabus.

{¶ 40} To establish a right to exemption for a prospective use, a private property owner must show that it is "actively working toward [an] actual use for the public benefit." *Holy Trinity Protestant Episcopal Church of Kenwood v. Bowers*, 172 Ohio St. 103, 107, 173 N.E.2d 682 (1961). "Evidence that surveys have been made and plans drawn or that active fund-raising campaigns are being carried on is indicative that the exempting use will be made of the property within a reasonable time." *Id.* A property's ability to satisfy this standard turns on whether its "owner is developing the property for [an] exempt use" as of the tax-lien date of the tax year at issue. *Episcopal School of Cincinnati v. Levin*, 117 Ohio St.3d 412, 2008-Ohio-939, 884 N.E.2d 561, ¶ 1, 25.

{¶ 41} The prospective-use doctrine does not apply to the undeveloped property here for two reasons. First, the same reasoning that leads us to affirm the

BTA's decision that the developed property at issue is not exempt under R.C. 5709.12 or 5709.121 compels us to conclude that the undeveloped property is not exempt. It is, after all, only the prospect of an exempting use that justifies exemption under the prospective-use doctrine. *Episcopal School* at ¶ 10, citing *Carney* at paragraph one of the syllabus. Second, although Spire introduced some evidence of plans for future development, it is unclear how much of the undeveloped property those plans account for. Indeed, Spire's witness conceded that some of the property might be sold to developers for commercial use, which precludes application of the prospective-use doctrine to that land. *See Carney* at paragraph one of the syllabus.

**{¶ 42}** We affirm the BTA's holding that the prospective-use doctrine does not apply.

### CONCLUSION

**{¶ 43}** Because Spire has not established that any portion of the subject property qualifies for a charitable-use exemption, we affirm the BTA's decision.

Decision affirmed.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

O'NEILL, J., not participating.

_____

Warren & Young, P.L.L., Ryan M. Ellis, and Stuart W. Cordell; and Thrasher, Dinsmore & Dolan, L.P.A., and Mary Jane Trapp, for appellant.

Michael DeWine, Attorney General, and David D. Ebersole, Assistant Attorney General, for appellee.

_____